**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES E. GARDNER, JR. | |
| Appellant | No. 351 MDA 2015 |

Appeal from the Judgment of Sentence January 20, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001541-2013

BEFORE:  BOWES, OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 11, 2016**

Appellant, Charles E. Gardner, Jr., appeals from the January 20, 2015 judgment of sentence of seventy-two hours to six months of incarceration entered in Cumberland County following his convictions for driving under the influence-general impairment ("DUI"),[1] DUI-high rate of alcohol,[2] DUI-metabolite,[3] and DUI-combined influence.[4]  Appellant contends the trial court erred in denying his pre-trial motion to suppress evidence.  We affirm.

---

*Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1).

[2] 75 Pa.C.S. § 3802(b).

[3] 75 Pa.C.S. § 3802(d)(1)(iii).

[4] 75 Pa.C.S. § 3802(d)(3).

We summarize the factual and procedural background of this case as follows. On February 1, 2013, at approximately 11:45 p.m., Officer Keith Morris, of the East Pennsboro Township Police Department, was traveling in an unmarked police car behind Appellant's vehicle. N.T. Suppression Hr'g, 2/18/14, at 3-7. As Officer Morris followed Appellant, he observed Appellant's vehicle, "drift to the left over the yellow line" and quickly hit his brakes. *Id.* at 6. Officer Morris then twice witnessed Appellant's car "drift[] well to the right side of the road." *Id.* Appellant continued to a red light and turned right; at which time, Officer Morris observed Appellant's vehicle come into contact with the line. *Id.* at 6-7. Officer Morris next observed Appellant's vehicle "actually cross[] over the yellow line" while an oncoming vehicle was traveling toward Appellant. *Id.* at 7. Based on these observations, Officer Morris initiated a traffic stop. *Id.* Officer Morris conducted field sobriety tests and determined Appellant was incapable of safely operating his vehicle. N.T. Trial, 10/15/14, at 16-19.

Prior to trial, Appellant filed a motion to suppress evidence based on a lack of reasonable suspicion or probable cause to effectuate a traffic stop. The trial court held a suppression hearing on February 18, 2014. On March 20, 2014, the trial court issued an order and accompanying opinion denying Appellant's motion. The trial court included in its opinion the following findings of fact and conclusions of law.

> 1. Officer Keith Morris is employed by the East Pennsboro Township Police Department and has

been so employed for twelve years. He has had training in detecting drivers who may be under the influence of alcohol or drugs, including yearly updates with field sobriety and advanced roadside impairment detention class.

2. Officer Morris was working on the evening of February 1, 2013, in an unmarked police vehicle equipped with a video camera.

3. Officer Morris pulled [Appellant] over on February 1, 2013, shortly before midnight.

4. Officer Morris first saw [Appellant's] vehicle while he was traveling northbound on North Enola Drive.

5. As he followed [Appellant], Officer Morris observed the vehicle cross over or touch the yellow line with its tires in the area of Cumberland Road and North Enola Drive.

6. Officer Morris then observed the vehicle negotiate an s-curve in the roadway. During the first part of the turn, he saw the vehicle drift to the left and cross over the double yellow line a second time.

7. As the vehicle proceeded through the s-curve, Officer Morris observed the vehicle execute a quick unexplainable braking action. Officer Morris stated this as unusual because the vehicle was not driving at an excessive rate of speed and with the nature of the s-curve being uphill, a driver would need to accelerate through the turn and not use the brakes unless he was starting to drift to the other side of the road.

8. As the vehicle travelled through the last part of the s-curve, which was a left-hand curve, Officer Morris saw the vehicle drift well to the right side of the road.

9. Officer Morris continued to follow the vehicle northbound on North Enola Drive and saw the vehicle

drift to the very far right side of the road after the vehicle crossed through the intersection at East Columbia Road. Officer Morris stated that the vehicle drifted so far to the right it was in an area on the roadway where cars are allowed to park. If a car had been parked there, [Appellant's] vehicle would have struck it.

10. The video recording from Officer Morris's vehicle clearly shows [Appellant's] vehicle drift to the far right after the intersection at North Enola Drive and East Columbia Road.

11. [Appellant] then made a right turn onto Shady Lane; and as he does so, Officer Morris observed the driver's side tires come into contact with the yellow line a third time.

12. There is no separate right hand turn lane to turn onto Shady Lane. Officer Morris noted it was highly unusual that [Appellant's] vehicle would be so far to the right prior to turning onto Shady Lane.

13. There is no berm line or shoulder area on North Enola Drive in the vicinity of Shady Lane. There is a standard curb on North Enola Drive, and [Appellant's] vehicle was so far to the right that it came close to striking the curb.

14. As the vehicle continued eastbound on Shady Lane, Officer Morris witnessed the vehicle cross over the double yellow line a fourth time into the lane of opposing traffic by a half to full tire width. As [Appellant's] vehicle crossed over this double yellow line separating opposing lanes of traffic, there was an oncoming vehicle travelling westbound toward [Appellant's] vehicle.

15. The video clearly shows [Appellant's] vehicle cross the double yellow line on Shady Lane while oncoming vehicles approached.

> 16. Officer Morris had probable cause to make a traffic stop for a violation of 75 Pa.C.S.A. § 3309 – Driving on Roadways Laned for Traffic.
>
> 17. After making all the above observations, given the totality of the circumstances, Officer Morris had reasonable suspicion to believe that something was medically wrong with the driver of the vehicle or that the driver was under the influence of alcohol which impaired his ability to safely drive the motor vehicle and that additional investigation was warranted.

Trial Ct. Op., 3/20/14, at 1-4.

Appellant proceeded to a non-jury trial on October 15, 2014. At the conclusion of the trial, Appellant was convicted of the above crimes. The trial court sentenced him on January 20, 2015. Appellant filed a motion for reconsideration of his sentence on January 27, 2015, and the trial court denied said motion on February 3, 2015.[5] Appellant filed a timely notice of appeal on February 25, 2015. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant raises the following issue for our review.

---

[5] We note that both Appellant and the Commonwealth suggest in their respective briefs that Appellant's appeal lies from the February 3, 2015 order denying Appellant's post-sentence motion. However, Appellant's notice of appeal correctly indicates the appeal lies from the January 20, 2015 judgment of sentence, made final by the denial of his post-sentence motion. *See Commonwealth v. Kuykendall*, 2 A.3d 559, 560 n.1 (Pa. Super. 2010).

> Did the trial court err when it denied Appellant's
> omnibus pretrial motion to suppress evidence?

Appellant's Brief at 5.

Appellant argues there was no probable cause or reasonable suspicion to justify the vehicle stop because "[t]he video from Officer Morris' patrol vehicle did not clearly show Appellant crossing the yellow line on the left (2 to 3 times)." Appellant's Brief at 10. He continues that he did not strike the curb on the right side of the road, and he made a legal right turn without placing pedestrians in any danger. **Id.** Therefore, "[t]he evidence presented did not establish that the officer had probable cause [or reasonable suspicion] to stop Appellant's vehicle." **Id.** For the following reasons, we conclude Appellant is due no relief.

We first must ascertain if Appellant has properly preserved his argument. We note, with disapproval, that with the exception of a short statement outlining this Court's standard of review, Appellant's entire argument is devoid of citations to or discussion of legal authority in support of his position. **See** Appellant's Brief at 9-10. Instead, Appellant merely provides a brief summary of Officer Morris' testimony and challenges his credibility.[6] **See id.** Absent from Appellant's brief is any meaningful

---

[6] We remind Appellant, "it [is] for the trier of fact to determine the weight of the evidence and the credibility of the witnesses. . . . This Court may not weigh the evidence or substitute its judgment [f]or that of the factfinder." **Commonwealth v. Devries**, 112 A.3d 663, 667 (Pa. Super. 2015) (citations omitted).

discussion of either the probable cause or reasonable suspicion standard. *See id.*

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in conflicting roles of advocate and neutral arbiter. **When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived**.

*In re S.T.S., J.R.*, 76 A.3d 24, 42 (Pa. Super. 2013) (citations omitted and emphasis added), *appeal denied*, 91 A.3d 163 (Pa. Super. 2014).

As noted, Appellant wholly failed to include any citation to legal authority or pertinent discussion in support of his argument, with the exception of one citation to the standard of review. Appellant's Brief at 9-10. Therefore, we conclude Appellant has waived review of his sole challenge on appeal. *See In re S.T.S., J.R.*, 76 A.3d at 42.

Assuming, however, Appellant had not waived his challenge, we are mindful that the following principles apply over challenges to suppression orders.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. . . . Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. . . . [T]he conclusions of law

- 7 -

of the suppression court are subject to plenary review.

***Commonwealth v. Salter***, 121 A.3d 987, 992 (Pa. Super. 2015) (citation omitted).

Specifically, in the context of traffic stops, the level of suspicion requires is codified as follows.

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicions that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

However, this Court has expounded that in some instances, probable cause is the correct standard.

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. **If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle.** Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for . . . DUI. . . . **[I]f an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable**

- 8 -

> **suspicion** of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Commonwealth v. Ibrahim*, ___ A.3d ___, ___ 2015 WL 6777602, at *4 (Pa. Super. 2015) (citation omitted and emphases added).

Instantly, had Appellant not waived review of this issue, we would conclude that the trial court's analysis in its Rule 1925(a) opinion addressing Appellant's issue is in accord with our views, and we would adopt its reasoning. *See* Trial Ct. Op. 5/4/15, at 4-6. Specifically, the trial court concluded that Officer Morris (1) had probable cause to initiate a traffic stop based Appellant's violation of 75 Pa.C.S. § 3309(1), and (2) possessed sufficient reasonable suspicion that Appellant was driving under the influence. *See id.* Thus, the stop was legal, and we discern no basis to reverse. *See Ibrahim*, ___ A.3d at ___, 2015 WL6777602 at *4; *Salter*, 121 A.3d at 992.

Based on the foregoing discussion, we conclude Appellant is not entitled to relief on his claim, and we discern no error in the trial court's ruling. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016

COMMONWEALTH

v.

CHARLES E. GARDNER, JR.
OTN: L762526-2

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: CP-21-CR-1541-2013
:
: CHARGES: (1) DUI-GEN. IMP. (1st); (2) DUI-
: HIGH RATE (1st); (3) DUI-CONTROLLED
: SUBSTANCE (1st); (4) DUI-COMBINATION
: (1st)
:
: AFFIANT: PTL. KEITH W. MORRIS

### IN RE: OPINION PURSUANT TO PA.R.A.P. 1925

Ebert, J. – May 4, 2015 -

Charles E. Gardner, Jr., Defendant in the above-captioned case, appeals his conviction of the above-captioned offenses following a non-jury trial. Defendant specifically appeals the following errors:

1. The Trial Court erred in denying Mr. Gardner's Omnibus Pre-Trial Motion to Suppress. Specifically, the Commonwealth failed to establish that Officer Morris had sufficient probable cause to pull over the vehicle that was being operated by Mr. Gardner in East Pennsboro Township. Additionally, the Commonwealth failed to establish that Officer Morris had reasonable suspicion to believe that criminal activity was afoot.

2. The evidence presented by the Commonwealth was not sufficient to convict Mr. Gardner of the above-captioned charges.[1]

### Procedural History

Defendant filed a Motion for Suppression of Evidence on September 18, 2013, where he argued that there was no probable cause or reasonable suspicion to stop his vehicle. A hearing on the Motion for Suppression of Evidence was held on February 18, 2014. Defendant's Motion for Suppression of Evidence was denied on March 20, 2014.

---

[1]Concise Statement of the Errors Complained of on Appeal, filed March 17, 2015



A non-jury trial was held on October 15, 2014. After the conclusion of testimony, this Court found Defendant guilty of the above-captioned DUI offenses. Defendant was sentenced on January 20, 2015, to serve 72 hours to 6 months in Cumberland County Prison. Defendant filed a Motion for Modification of Sentence on January 27, 2015, which was denied by Order of Court on February 3, 2015. This appeal followed.

## Statement of Facts

This Court made detailed findings of fact in this case in its prior opinion In Re: Motion for Suppression of Evidence, dated March 20, 2014. These facts include the observations Officer Keith Morris made of Defendant's driving on the evening of February 1, 2013, before he initiated a stop of Defendant's vehicle. This Opinion is incorporated fully herein.

After observing Defendant's driving, Officer Morris initiated a stop of Defendant in the parking lot of an apartment complex off of Beaver Avenue.[2] After he was stopped, Defendant got out of the vehicle and began talking to Officer Morris. Officer Morris testified that he immediately detected the odor of alcohol and noticed that Defendant's speech was slurred. Defendant then provided his driving information to Officer Morris and continued to remain outside the vehicle talking to Officer Morris.[3] Officer Morris then asked Defendant about his whereabouts that evening. Defendant admitted that he had four beers at a friend's house and that he had finished his last beer just prior to leaving his friend's house. During this interaction, Officer Morris stated that Defendant's physical movements were slow and his voice was slow, slurred, and raspy.[4]

---

[2] Notes of Testimony, In Re: Non-Jury Trial, 13, Oct. 15, 2014 (hereinafter N.T. at ___ )
[3] N.T. at 13-14
[4] N.T. at 15

2

Officer Morris then asked Defendant if he would be willing to perform field sobriety tests and Defendant agreed.[5] Officer Morris is certified in conducting field sobriety testing.[6] First Officer Morris had Defendant perform the walk and turn test. After explaining the test to Defendant, he saw that Defendant was unsteady on his feet and had to separate his feet to keep his balance.[7] Officer Morris next had Defendant perform the one-legged stand test. Defendant could not keep his leg up and kept putting it back on the ground after each number. Officer Morris had to stop the test for Defendant's safety since he could not keep his balance.[8]

Officer Morris then placed Defendant in custody because he felt that Defendant was incapable of safe driving due to "...the whole totality of [his] interactions with [Defendant], from seeing his driving on North Enola Drive, to his admission of drinking, the odor of alcohol, the displaying of intoxication, the signs of intoxication he displayed while performing [field sobriety tests], and [his] years of experience and training".[9] After searching Defendant incident to arrest, Officer Morris found a marijuana pipe in his jacket. Officer Morris then advised Defendant of his <u>Miranda</u> rights and asked him about the marijuana. Defendant admitted to smoking marijuana within hours of being pulled over.[10]

Officer Morris then took Defendant to the booking center and obtained his consent to draw blood for testing. Defendant's blood was drawn within two hours of him

---

[5] N.T. at 16
[6] N.T. at 6
[7] N.T. at 16-17
[8] N.T. at 18
[9] N.T. at 19-20
[10] N.T. 20

3

driving. After testing, Defendant's BAC was determined to be .157.[11] Additionally,

Defendant was found to have 14 nanograms of Delta 9 carboxy THC and 1 nanogram

of Delta 9 THC.[12] Both of these levels were at or above the levels required by the

Pennsylvania Department of Health's threshold limits for minimum levels of controlled

substances.[13]

## Discussion

## I. Suppression

Defendant first argues that this Court erred in denying his Motion for Suppression

of Evidence because there was not sufficient probable cause or reasonable suspicion

for Officer Morris to stop Defendant. This Court did not err.

The standard of review following the denial of a suppression motion is well

settled and is as follows:

> [The appellate court's] standard of review of a denial of a suppression is
> whether the record supports the trial court's factual findings and whether
> the legal conclusions drawn therefrom are free from error. [The appellate
> court's] scope of review is limited; [the appellate court] may consider only
> the evidence of the prosecution and so much of the evidence for the
> defense as remains uncontradicted when read in the context of the record
> as a whole. Where the record supports the findings of the suppression
> court, [the appellate court is] bound by those facts and may reverse only if
> the court erred in reaching its legal conclusions based upon the facts.

Commonwealth v. Page, 965 A.2d 1212, 1217 (Pa. Super. 2009)(internal citations

omitted).

---

[11] N.T. at 30; Com. Ex. 1
[12] N.T. at 30-31; Com. Ex. 2
[13] N.T. at 31

4

Again, this Court's prior Opinion dated March 20, 2014, detailing the reasoning behind the denial of Defendant's Motion for Suppression of Evidence is fully incorporated herein.

To reiterate from this Court's prior opinion, probable cause to stop a vehicle for a traffic violation exists when the officer is able to articulate specific facts at the time of the stop which would lead a reasonable person to believe that it is more probable than not that a violation of the Motor Vehicle Code has occurred. Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004). Probable cause for a violation of 75 Pa.C.S.A. § 3309(1), driving on roadways laned for traffic, depends on whether the driver's movements are done safely. Commonwealth v. Cook, 865 A.2d 869, 874 (Pa. Super. 2004).

Here, Officer Morris clearly articulated at the suppression hearing that he observed several instances where Defendant's vehicle violated 75 Pa.C.S.A § 3309(1). He saw Defendant's vehicle touch or cross over the double yellow line on four separate occasions. On one of those occasions, he observed Defendant's vehicle over the center yellow line by a half to full tire width while there was oncoming traffic. He also stated he saw Defendant drive to the extreme right of the roadway before making a right hand turn, where there was no turning lane. These observations were clearly articulated by Officer Morris at the suppression hearing and indicate there was probable cause to stop Defendant's vehicle for a violation of 75 Pa.C.S.A. § 3309(1). *See* Commonwealth v. Klopp, 863 A.2d 1211, 1214-15 (Pa. Super. 2004) (finding probable cause existed when officer observed vehicle for 1.6 miles and saw the vehicle weaving

5

side to side four times, crossing the double yellow and fog lines, and once interfering with oncoming traffic).

In addition to having probable cause to stop Defendant, Officer Morris had sufficient reasonable suspicion to stop Defendant for suspected DUI. Here, Officer Morris was able to state specific and articulable facts that Defendant might be driving under the influence and more investigation was required. *See* Commonwealth v. Sands, 887 A.2d 261, 272 (Pa. Super. 2005). In addition to the above observations, Officer Morris saw Defendant brake quickly and unexplainably while traveling through an s-curve, where typically a car would need to accelerate because the curve is uphill. There was clear evidence that Officer Morris had both probable cause and reasonable suspicion to stop Defendant and this Court did not err in denying Defendant's Motion for Suppression of Evidence.

## II. Sufficiency of the Evidence

Defendant next argues that there was not sufficient evidence to support his conviction at his bench trial. There was sufficient evidence presented for this Court to find Defendant guilty of the four above-captioned charges beyond a reasonable doubt.

The standard for reviewing the sufficiency of the evidence presented at trial, including a bench trial, is well settled.

> The standard [appellate courts] apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, [appellate courts] may not weigh the evidence and substitute [their] judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

6

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Johnson, 833 A.2d 260, 262-63 (Pa. Super. 2003) (internal citations and quotations omitted).

Here, there was more than sufficient evidence that Defendant was driving under the influence ("DUI"). Defendant was charged with four different counts of DUI. For all DUI counts the Commonwealth had to establish that Defendant was operating a motor vehicle. In order to show Defendant was guilty of DUI-General Impairment, the Commonwealth had to establish that Defendant was incapable of safe driving. 75 Pa.C.S. § 3802(a)(1). For DUI-High Rate, the Commonwealth had to prove that Defendant's BAC was between 0.10 and 0.16. 75 Pa.C.S. § 3802(b). For DUI-Controlled Substance, the Commonwealth had to prove that Defendant's blood had any metabolite of a Schedule I, II, or III drug. 75 Pa.C.S.§ 3802(d)(1)(iii). And finally, for DUI-Combination, the Commonwealth had to establish that Defendant was under the combined influence of alcohol and a drug, or combination of drugs, to a degree which impaired his ability to safely operate a vehicle. The Commonwealth must prove all these elements beyond a reasonable doubt.

In this case, the Commonwealth proved all four counts of DUI beyond a reasonable doubt. There was no doubt Defendant was driving, as he was the only person present in the vehicle after Officer Morris conducted a traffic stop. Officer Morris observed Defendant's weaving while he was driving. At one point he saw Defendant's

7

vehicle in the opposite lane of traffic while there was an oncoming vehicle. He also noticed an odor of alcohol on Defendant and that Defendant was slurring his speech and could not maintain his balance. Defendant was unable to perform either the walk and turn or the one-legged stand field sobriety tests satisfactorily. Additionally, Defendant admitted that he drank four beers, the most recent one right before he started driving. Defendant also admitted to smoking marijuana before driving that evening. Most importantly, the lab work for Defendant's blood indicated that his BAC was .157 and that THC was present. Based on all of the above evidence, there was no error in this Court, as fact-finder, finding Defendant guilty of the above-captioned offenses.

## Conclusion

Officer Morris was able to articulate specific observations of Defendant's driving and had both probable cause and reasonable suspicion to pull Defendant over. There was no error in denying Defendant's Motion for Suppression of Evidence. Additionally, there was more than sufficient evidence, especially given the lab results from Defendant's blood draw, that Defendant was guilty of four counts of DUI.

By the Court,

M. L. Ebert, Jr.,                    J.

District Attorney's Office

Arla M. Waller, Esquire
Deputy Public Defender

Copies delivered MAY 0 5 2015

8

COMMONWEALTH

v.

CHARLES E. GARDNER, JR.
OTN: L762526 – 2

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
:
: CP – 21 – CR – 1541 – 2013
:
: CHARGES: (1) DUI, GENERAL
: IMPAIRMENT; (2) DUI, HIGH RATE; (3) DUI,
: CONTROLLED SUBSTANCE; (4) DUI,
: COMBINATION; (5) UNLAWFUL
: POSSESSION OF SCHEDULE I,
: CONTROLLED SUBSTANCE;
: (6) UNLAWFUL POSSESSION OF DRUG
: PARAPHERNALIA
:
: AFFIANT: PTL. KEITH W. MORRIS

### IN RE: MOTION FOR SUPPRESSION OF EVIDENCE

### ORDER OF COURT

**AND NOW**, this 20th day of March, 2014, upon consideration of Defendant's

Motion for Suppression of Evidence and after hearing on February 19, 2014;

**IT IS HEREBY ORDERED AND DIRECTED** that the Defendant's Motion for

Suppression of Evidence is **DENIED.**

By the Court,

M. L. Ebert, Jr.,

John C. Dailey, Esquire
District Attorney's Office

Jeffrey Cook, Esquire
Attorney for Defendant

MAR 2 0 2014

Copies mailed on _____

MAR 2 0 2014

Copies delivered on _____

| COMMONWEALTH | : IN THE COURT OF COMMON PLEAS OF |
| | : CUMBERLAND COUNTY, PENNSYLVANIA |
| | : |
| v. | : CP – 21 – CR – 1541 – 2013 |
| | : |
| | : CHARGES: (1) DUI, GENERAL |
| | : IMPAIRMENT; (2) DUI, HIGH RATE; (3) DUI, |
| | : CONTROLLED SUBSTANCE; (4) DUI, |
| | : COMBINATION; (5) UNLAWFUL |
| | : POSSESSION OF SCHEDULE I, |
| | : CONTROLLED SUBSTANCE; |
| | : (6) UNLAWFUL POSSESSION OF DRUG |
| CHARLES E. GARDNER, JR. | : PARAPHERNALIA |
| OTN: L762526 – 2 | : |
| | : AFFIANT: PTL. KEITH W. MORRIS |

## IN RE: MOTION FOR SUPPRESSION OF EVIDENCE

## OPINION AND ORDER OF COURT

**Ebert, J., March 20, 2014 –**

Charles E. Gardner, Jr., Defendant in the above-captioned case filed a Motion for Suppression of Evidence. A hearing was held on February 19, 2014. For the reasons discussed below, this Court finds that there was probable cause and reasonable suspicion for Officer Keith Morris to initiate a traffic stop of Defendant's vehicle.

## I. Findings of Fact

1. Officer Keith Morris is employed by the East Pennsboro Township Police Department and has been so employed for twelve years. He has had training in detecting drivers who may be under the influence of alcohol or drugs, including yearly updates with field sobriety and advanced roadside impairment detection class.[1]

---

[1] Notes of Testimony, In Re: Hearing on a Motion to Suppress, Feb. 18, 2014, 4 (hereinafter "N.T. at __")

1

2. Officer Morris was working on the evening of February 1, 2013, in an unmarked police vehicle equipped with a video camera.[2]

3. Officer Morris pulled Defendant over on February 1, 2013, shortly before midnight.[3]

4. Officer Morris first saw Defendant's vehicle while he was travelling northbound on North Enola Drive.[4]

5. As he followed Defendant, Officer Morris observed the vehicle cross over or touch the double yellow line with its tires in the area of Cumberland Road and North Enola Drive.[5]

6. Officer Morris then observed the vehicle negotiate an s-curve in the roadway. During the first part of the turn, he saw the vehicle drift to the left and cross over the double yellow line a second time.[6]

7. As the vehicle proceeded through the s-curve, Officer Morris observed the vehicle execute a quick unexplainable braking action.[7] Officer Morris stated this was unusual because the vehicle was not driving at an excessive rate of speed and with the nature of the s-curve being uphill, a driver would need to accelerate through the turn and not use the brakes unless he was starting to drift to the other side of the road.[8]

8. As the vehicle travelled through the last part of the s-curve, which was a left-hand curve, Officer Morris saw the vehicle drift well to the right side the road.[9]

---

[2] N.T. at 5
[3] N.T. at 8
[4] N.T. at 5-6
[5] N.T. at 6
[6] N.T. at 6
[7] N.T. at 6
[8] N.T. at 15-16
[9] N.T. at 6

2

9. Officer Morris continued to follow the vehicle northbound on North Enola Drive and saw the vehicle drift to the very far right side of the road after the vehicle crossed through the intersection at East Columbia Road. Officer Morris stated that the vehicle drifted so far to the right it was in an area on the roadway where cars are allowed to park. If a car had been parked there, the Defendant's vehicle would have struck it.[10]

10. The video recording from Officer Morris's vehicle clearly shows Defendant's vehicle drift to the far right after the intersection at North Enola Drive and East Columbia Road.[11]

11. Defendant then made a right turn onto Shady Lane; and as he does so, Officer Morris observed the driver's side tires come into contact with the yellow line a third time.[12]

12. There is no separate right hand turn lane to turn onto Shady Lane. Officer Morris noted it was highly unusual that Defendant's vehicle would be so far to the right prior to turning onto Shady Lane.[13]

13. There is no berm line or shoulder area on North Enola Drive in the vicinity of Shady Lane. There is a standard curb on North Enola Drive, and the Defendant's vehicle was so far to the right that it came close to striking the curb.[14]

14. As the vehicle continued eastbound on Shady Lane, Officer Morris witnessed the vehicle cross over the double yellow line a fourth time into the lane of opposing traffic by a half to full tire width. As Defendant's vehicle crossed over this

---

[10] N.T. at 6
[11] N.T. at 11; Com. Ex. 1
[12] N.T. at 6-7
[13] N.T. at 14
[14] N.T. at 14

3

double yellow line separating opposing lanes of traffic, there was an oncoming vehicle travelling westbound toward Defendant's vehicle.[15]

15. The video clearly shows Defendant's vehicle cross the double yellow line on Shady Lane while two oncoming vehicles approach.[16]

16. Officer Morris had probable cause to make a traffic stop for a violation of 75 Pa. C.S.A. § 3309 - Driving on Roadways Laned for Traffic.[17]

17. After making all the above observations, given the totality of the circumstances, Officer Morris had reasonable suspicion to believe that something was medically wrong with the driver of the vehicle or that the driver was under the influence of alcohol which impaired his ability to safely drive the motor vehicle and that additional investigation was warranted.[18]

## II. Discussion

Defendant argues that Officer Morris had neither probable cause nor reasonable suspicion to pull him over on February 1, 2013. Therefore, Defendant argues that any evidence obtained after the traffic stop should be suppressed.

### A. Probable Cause Existed to Stop the Defendant's Vehicle for a Violation of Driving on Roadways Laned for Traffic

In order to initiate a traffic stop for a traffic offense where no further investigation is required, such as a violation of driving on roadways laned for traffic, an officer must have probable cause. Commonwealth v. Feczko, 10 A.3d 1285, (Pa. Super. 2010); Probable cause is not a determination which requires certainty; rather, it exists "when criminality is one reasonable inference not necessarily even the most likely inference."

---

[15] N.T. at 7
[16] N.T. at 11; Com. Ex. 1
[17] N.T. at 8, 17
[18] N.T. at 7, 11

4

Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004), Commonwealth v. Youch, 62 Cumb. 95, 99-100 (2013). Probable cause exists when the officer is able to articulate specific facts possessed by him at the time of the vehicle stop which would lead a reasonable person to believe that it is more probable than not that a violation of the Motor Vehicle Code has occurred. Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004). Probable cause to stop a vehicle for a violation of 75 Pa.C.S.A. § 3309(1), driving on roadways laned for traffic, depends on whether the driver's movement from his lane is done safely." Commonwealth v. Cook, 865 A.2d 869, 874 (Pa. Super. 2004). Section 3309(1) of the Motor Vehicle Code states that, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S.A. § 3309(1).

Defendant cites to several Cumberland County cases in support of his argument that Officer Morris did not have probable cause to pull him over for a violation of § 3309(1). In Commonwealth v. Malone, 19 Pa. D&C 4th 41(Cumb. Co. 1993), Judge Bayley stated that § 3309(1) does not "require perfect adherence to driving entirely within a single marked lane on all occasions." Malone, 19 Pa. D&C 4th at 44. Rather, a vehicle should be driven as "*nearly as practicable* entirely within a single marked lane." Id. (emphasis in original). In Malone, the defendant was observed crossing into the berm once and over the center line once, with nothing else unusual about her driving. Id. at 42. It was also noted that at no point were there any other vehicles driving near the defendant. Id. at 44. *See also* Commonwealth v. Nelson, 60 Cumb. 331 (2011)(no

5

probable cause to stop when defendant drifted to the left a few times onto the yellow line and took one turn wide while no oncoming traffic was present).

Defendant also relies on Commonwealth v. Youch, where it was found that the officer did not have probable cause to stop the defendant. In that case, the officer observed the defendant drift onto the white fog line and back over to touch the double yellow line. Commonwealth v. Youch, 62 Cumb. 95, 96 (2013). At one point, the officer stated that there was oncoming traffic but that no evasive action was required by the oncoming drivers nor was defendant's vehicle ever straddling the center lines. Id.

This case is clearly different. In this case, Officer Morris did not merely see Defendant touch the double yellow line, but he witnessed Defendant touch or cross over the yellow line on four occasions, one time by a half to full tire width while there was oncoming traffic. While Officer Morris testified he did not see any emergency evasive action by the oncoming drivers, it was clear Defendant was in their lane. Additionally, Officer Morris saw Defendant's vehicle drive to the extreme right of the roadway before turning when no turning lane was present. Officer Morris possessed probable cause that a violation of § 3309(1) occurred and was proper in stopping Defendant's vehicle.

B. **Based on the Officer's Observations, He Did Have Reasonable Suspicion That the Defendant Was Driving Under the Influence Which Warranted Further Investigation**

For those traffic offenses, including driving under the influence (hereinafter "DUI"), that require more investigation, the officer must be able to relay specific and articulable facts that would give rise to a reasonable suspicion that the person is DUI. Commonwealth v. Sands, 887 A.2d 261, 272 (Pa. Super. 2005). When considering

6

whether an officer had such reasonable suspicion, due weight must be given "to the specific reasonable inferences [he] is entitled to draw from the facts in light of his experience." Id. (citing Commonwealth v. Rodgers, 849 A.2d 1185, 1189 (Pa. 2004)).

Officer Morris had reasonable suspicion to pull over Defendant for suspected DUI. In addition to the reasons stated above, Officer Morris observed Defendant navigate through an s-curve and brake quickly and unexplainably. This struck Officer Morris as odd, because this portion of the s-curve was uphill and vehicles not travelling at an excessive speed would usually have to accelerate to get up the hill, unless they were beginning to drift into other lanes. Clearly, given all of the observations made by Officer Morris, it was clear that either something was medically wrong with the driver or that he was driving under the influence. In either case, Officer Morris was justified in conducting a traffic stop in order to do additional investigation. There is little doubt that he had reasonable suspicion that the Defendant was driving under the influence. Commonwealth v. Feczko, 10 A.3d 1205 (Pa. Super. 2010)

In this case, Officer Morris did more than merely state he saw Defendant's vehicle cross over the yellow line. He provided several specific and articulable instances which, when viewed collectively and in light of his twelve years of experience, gave him reasonable suspicion to believe that Defendant might be DUI and that more investigation was necessary. This Court finds that based on these specific observations that reasonable suspicion was present for Officer Morris to stop Defendant for further investigation of DUI.

7

## Conclusion

Officer Morris had both probable cause and reasonable suspicion to initiate a traffic stop of Defendant after he witnessed Defendant's vehicle cross over the double yellow lines on more than one occasion. Therefore, the following order will be entered:

AND NOW, this 20th day of March, 2014, upon consideration of Defendant's Motion for Suppression of Evidence and after hearing on February 19, 2014;

IT IS HEREBY ORDERED AND DIRECTED that the Defendant's Motion for Suppression of Evidence is DENIED.

By the Court,

_____
M. L. Ebert, Jr.,                    J.

John C. Dailey, Esquire
District Attorney's Office

Jeffrey Cook, Esquire
Attorney for Defendant