**COMMONWEALTH OF PENNSYLVANIA,**
**Appellant,**

**v.**

**John M. LINDBLOM, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed July 13, 2004.

---

Michael W. Streily, Deputy District Attorney, for Commonwealth, appellant.

Timothy J. Codelka, Pittsburgh, for appellee.

Before: HUDOCK, LALLY–GREEN and BOWES, JJ.

OPINION BY HUDOCK, J.:

¶ 1 In this appeal, the Commonwealth asserts that the trial court erred in granting Appellee's suppression motion.[1] Appellee filed the motion after he was charged with two counts of driving under the influence and one count of careless driving.[2] We reverse and remand for trial.

¶ 2 The standard of review employed by an appellate court when reviewing the grant of a suppression motion has been summarized by our Supreme Court:

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). *See Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). In reviewing the ruling of a suppression court, our task is to deter-

---

1. Along with its notice of appeal, the Commonwealth has certified in good faith that the court's order granting suppression of the evidence will terminate or substantially handicap its prosecution of the case. *See Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985); *see also* Pa.R.A.P. 311(d), 904(e).

2. 75 Pa.C.S.A §§ 3731(a)(1), 3731(a)(4) and 3714, respectively.

mine whether the factual findings are supported by the record. *Commonwealth v. Monarch,* 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James,* 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. James,* 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin,* 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

*Commonwealth v. DeWitt,* 530 Pa. 299, 301–02, 608 A.2d 1030, 1031 (1992) (footnote omitted). Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings. *Commonwealth v. Reddix,* 355 Pa.Super. 514, 513 A.2d 1041, 1042 (1986).

¶ 3 With regard to the suppression motion, the Commonwealth presented the testimony of two police officers and a citizen witness. The trial court summarized its factual findings from this testimony, which the parties do not dispute, as follows:

On October 21, 2001, at approximately 10:40 p.m., a private citizen named Greg Bergman was driving behind [Appellee's] vehicle and saw it weave back and forth across the yellow and white line[s]. [Appellee's] vehicle crossed 1½ feet over the double yellow line four or five times, straddled the double yellow line, and crossed the berm by one set of tires four or five times. Mr. Bergman called 911, reported his observations and continued to follow [Appellee] until Officer Eckels of the Ross Township police appeared.

Mr. Bergman stayed about 20 to 30 feet behind [Appellee's] vehicle, following the vehicle in a westerly direction from Babcock Boulevard through Laurel Gardens and onto Perry Highway. He followed [Appellee's] vehicle into a residential neighborhood, then waited for the police to arrive when [Appellee] drove down a dead-end street.

When Officer Eckels arrived, Mr. Bergman told the officer that [Appellee] drove down the dead-end street and had not come back out. Mr. Bergman identified [Appellee's] vehicle and described the erratic driving. Officer Eckels located [Appellee's] vehicle as it drove past him on the dead-end street and initiated the traffic stop. The traffic stop occurred a few minutes after the initial dispatch call. Officer Eckels had not personally observed any vehicle code violations or erratic driving behavior. [Appellee] appeared intoxicated and was arrested after he failed field sobriety tests.

Trial Court Opinion, 7/17/03, at 1–2 (citations omitted). The record supports the suppression court's factual findings. Next, we must determine whether the court's legal conclusions from these findings are correct. Given the above findings, the suppression court concluded that:

This Court granted [Appellee's] suppression motion due to [*Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001)], and its prodigy [sic]. Officer Eckels was permitted to stop [Appellee's] vehicle based on the information he received from Mr. Bergman. An officer does not have to personally observe the illegal or suspicious conduct which forms the basis for the vehicle stop, but can rely on specific information provided by a highly reliable informant. Mr. Bergman was a highly reliable informant because he was a volunteer fire-

fighter who identified himself and personally met with Officer Eckels. *Commonwealth v. Korenkiewicz*, [743 A.2d 958 (Pa.Super.1999) (*en banc*)].

*Id.* at 3 n. 1.[3] The court further expanded upon its legal reasoning as follows:

A police officer has authority to stop a vehicle if the officer has articulable and reasonable grounds to suspect a vehicle code violation. The above appellate cases [(*Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983 (2001) and its progeny),] demonstrate that a motorist cannot be stopped for crossing the center line or the fog line multiple times unless there is evidence that the driving created a safety hazard. [Appellee's] erratic driving in the instant case was no more egregious [than] the driving in the above appellate cases. There were no other cars on the road in the residential area. Although there were several other vehicles on the road when [Appellee] crossed Perry Highway onto Perry Lane, there was no evidence that [Appellee's] driving endangered public safety.

The Commonwealth relies on *Commonwealth v. Slonaker*, [795 A.2d 397 (Pa.Super.2002)], as support that the traffic stop was justified. In *Slonaker*, the Superior Court affirmed a DUI conviction where the vehicle repeatedly crossed the center line and fog line, accelerated and decelerated, and was stopped for erratic driving despite no evidence of a safety hazard. However,

the decisions of the Supreme Court that expanded *Gleason* compelled this Court to conclude that Officer Eckels did not have articulable and reasonable grounds to stop [Appellee's] vehicle.

Trial Court Opinion, 7/17/03, at 4–5.

¶ 4 Section 6308(b) of the Vehicle Code allows police officers to stop a vehicle if they have "articulable and reasonable grounds to suspect a violation" of the Vehicle Code. 75 Pa.C.S.A. § 6308(b).[4] As this Court has recently summarized:

In order for a traffic stop to be justified, a police officer must have probable cause to believe that a violation of the Vehicle Code or regulations has taken place. *Commonwealth v. Battaglia*, 802 A.2d 652, 656 (Pa.Super.2002). The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code. *Id.* Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. *Commonwealth v. Stroud*, 699 A.2d 1305, 1308 (Pa.Super.1997). In considering when a traffic stop is justified, the Pennsylvania Supreme Court has stated that:

The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those who

---

3. We reject as unpersuasive Appellee's argument that Officer Eckels lacked probable cause to stop him because the officer failed to "corroborate the alleged infractions through independent observations after complete cessation of observations by the citizen witness." Appellee's Brief at 3. We further note that Appellee has not filed an appeal from the trial court's conclusion that Mr. Bergman's observations permitted Officer Eckels to effectuate the vehicle stop.

4. This section was amended on September 30, 2003, effective February 1, 2004, and now reads, in pertinent part: "**(b) Authority of police officer.**—Whenever a police officer ... has a reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle..." 75 Pa.C.S.A. § 6308(b).

travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court:

An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use is subject to government regulation. Automobile travel is a basic pervasive, and often necessary mode of transportation to and from one's home, workplace and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. *Delaware v. Prouse,* [440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660] (1979) (footnote omitted).

When previously faced with these two competing interests, we held "that a stop of a single vehicle is unreasonable where there is no outward sign the vehicle or the operator are in violation of the Vehicle Code[.] [B]efore the government may single out one automobile to stop, there must be specific facts justifying this intrusion."

*Commonwealth v. Whitmyer,* 542 Pa. 545, 551–52, 668 A.2d 1113, 1116–7 (1995) (some citations omitted).

*Commonwealth v. Mickley,* 846 A.2d 686, 689–690 (Pa.Super.2004). "The statutory standard of 'articulable and reasonable grounds' is the same as 'probable cause.'" *Id.* (citing *Battaglia,* 802 A.2d at 655).

¶ 5 In the present case, the trial court found that Appellee's actions in, *in-ter alia,* crossing the center, double yellow lines on four or five occasions, at times straddling them, and crossing the berm line four or five times was not sufficient to create a safety hazard. In addition, the trial court found that "[Appellee's] erratic driving in the instant case was no more egregious [than] the driving in the appellate cases." Trial Court Opinion, 7/17/03, at 5. We cannot agree. As this Court stated in *Mickley, supra,* "[i]n *Gleason,* our Supreme Court found that there was not probable cause to stop the defendant after the officer observed the defendant's crossing of a berm line on two or three occasions over the distance of a quarter of a mile on a four-lane deserted roadway." *Mickley,* 846 A.2d at 690. Clearly, Appellee's driving in this case was "significantly less benign." *See Commonwealth v. Slonaker,* 795 A.2d 397, 401 (Pa.Super.2002), *appeal denied,* 571 Pa. 706, 812 A.2d 1229 (2002) (upholding a traffic stop as based upon probable cause when the trooper followed the appellant's vehicle for five miles and observed the vehicle fully cross the white fog line three times and weave numerous times over the double yellow center line and the white fog line without fully crossing either line). In addition, while opposing traffic may not have been present during the entire time Mr. Bergman observed Appellee driving, we note that a motorist may be stopped for reckless driving even if the only concern is for the motorist's own safety. *Commonwealth v. Masters,* 737 A.2d 1229, 1232 (Pa.Super.1999), *appeal denied,* 562 Pa. 667, 753 A.2d 816 (2000). Finally, to the extent it did so, it was improper for the trial court to rely upon unpublished memoranda of this Court, filed following *per curiam* reversals by our Supreme Court, to support its holding that the reach of *Gleason* has "expanded" and, therefore, justifies suppression in this case. *See generally, Com-*

*monwealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004) *(en banc)*.

¶ 6 Order reversed. Case remanded for trial. Jurisdiction relinquished.