J-S60034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOMINIC SHERIDAN, | |
| Appellant | No. 434 EDA 2015 |

Appeal from the Judgment of Sentence January 21, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006369-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                     **FILED December 18, 2015**

Dominic Sheridan appeals from the judgment of sentence imposed on January 21, 2015, in the Court of Common Pleas of Montgomery County. On the same day, at the conclusion of a bench trial, the court convicted Sheridan of two counts of driving under the influence ("DUI"),[1] and one count of disregarding a traffic lane.[2] The court sentenced Sheridan to a term of 30 days to six months in county prison with respect to the Section

_____

[1] 75 Pa.C.S. §§ 3802(a)(1) (general impairment) (second offense) and 3802(b) (high rate of alcohol) (second offense).

[2] 75 Pa.C.S. § 3309.

3802(b) DUI offense.[3]  On appeal, Sheridan contends the arresting officer lacked probable cause to stop his car on the roadway, and consequently, the trial court erred by refusing to suppress all evidence arising from the traffic stop.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court set forth the facts and procedural history as follows:

On March 18, 2012 at approximately 2:45 a.m., Pennsylvania State Trooper Brendan Shearn observed a white Ford Explorer, driven by [Sheridan], traveling west on Interstate 76.  While driving behind [Sheridan], Trooper Shearn observed the vehicle drift from the right lane into the left lane and then drift back.  Trooper Shearn observed similar maneuvers three more times in quick succession.  Trooper Shearn credibly testified that there were no obstructions or obstacles in the roadway to warrant evasive movement.

Trooper Shearn followed [Sheridan] for five miles after initially observing [Sheridan], believing an immediate traffic stop in the area was unsafe due to its narrow shoulder.  [Sheridan] promptly pulled over when Trooper Shearn activated his emergency lights.  Upon speaking with [Sheridan], Trooper Shearn noticed signs of intoxication.  [Sheridan] was placed under arrest after failing field sobriety tests and was subsequently charged with Driving Under the Influence ("DUI") and Disregarding a Traffic Lane.

On November 15, 2012, [Sheridan] filed a Motion to Suppress.  A hearing was held on September 4, 2014 to decide [Sheridan]'s Motion to Suppress.  On October 8, 2014, this Court denied the motion by way of a memorandum order.

_____

[3] The Section 3802(a)(1) crime merged with the Section 3802(b) offense for sentencing purposes.  The court imposed a fine with respect to the traffic violation.

On January 21, 2015, a bench trial was held on this matter, where [Sheridan] stipulated to all of the Commonwealth's evidence. [Sheridan] was found guilty on all charges. This appeal followed.

Trial Court Opinion, 3/30/2015, at 1-2 (footnotes omitted).[4]

In his sole issue on appeal, Sheridan claims the trial court erred in failing to grant his motion to suppress because Trooper Shearn did not possess probable cause to stop his vehicle for a violation of the Motor Vehicle Code ("MVC") under Section 3309(1).[5] Sheridan's Brief at 9. In support of his argument, Sheridan points to the following:

Trooper Shearn testified that [Sheridan]'s vehicle went over the dotted white line on approximately four occasions. He conceded that it may have been fewer than four times.

_____

[4] On February 17, 2015, the trial court ordered Sheridan to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Sheridan filed a concise statement on March 6, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 30, 2015.

[5] The MVC provides, in relevant part:

§ 3309. **Driving on roadways laned for traffic.**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

(1) *Driving within single lane.* –

A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

[Trooper] Shearn further testified that [Sheridan] was not speeding, he was not inconsistently accelerating or decelerating, there was no risk to other vehicles during the momentary crossings[.] Further, [Trooper] Shearn testified that after his observations, he followed [Sheridan] for close to one mile and did not observe any other Motor Vehicle Code Violations [besides a violation of Section 3309], not even after he turned on his dashcam. Since no other factors contributed to his decision to stop [Sheridan], Trooper Shearn lacked the requisite probable cause to stop [Sheridan] for a violation of the Motor Vehicle Code.

*Id.* at 13 (record citations omitted). Sheridan concludes: "Based upon [the trooper's] observations of [Sheridan]'s vehicle drifting over the dotted white line maybe fewer than four times, Trooper Shearn's testimony failed to articulate probable cause of a Motor Vehicle Violation." *Id.* at 14.

We begin with the following:

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

> ***Commonwealth v. Jones***, 605 Pa. 188, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa. Super. 2015). Moreover, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003), *appeal denied*, 847 A.2d 58 (Pa. 2004).

With regard to an officer's authority to stop a vehicle for an alleged violation, the MVC provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). A panel of this Court has previously explained:

> [Section] 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the Vehicle Code violation. However, in ***Commonwealth v. Feczko***, 2010 PA Super 239, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011), this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." In ***Feczko***, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. ***Id.*** at

1286. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. *Id.* Importantly, the officer did not testify that the stop was based on suspicion of DUI. *Id.* The defendant was convicted of DUI and a motor vehicle code violation, and argued on appeal that the vehicle stop was illegal. *Id.* at 1287.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." *Id.* at 1289 (*citing* **Commonwealth v. Sands**, 2005 PA Super 372, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. *Id.* Therefore:

> [A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry**[1] stop do not exist - maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.
>
> [1] **Terry v. Ohio**, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*Id.* at 1290 (*quoting* **Commonwealth v. Chase**, 599 Pa. 80, 94, 960 A.2d 108, 116 (2008)).

In **Feczko**, the police officer stopped the defendant's vehicle solely based on the defendant's failure to maintain a single lane in accordance with 75 Pa.C.S.A. § 3309. This Court held, therefore, that the vehicle stop could be constitutionally valid only if the officer could "articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Vehicle] Code." *Id.* at 1291. We also held that the police officer's observation of the defendant swerving over the double yellow median line and the fog line created probable cause to suspect a violation of § 3309. *Id.*

*Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa. Super. 2012), *appeal denied*, 74 A.3d 125 (Pa. 2013).[6]

Turning to the present matter, the record reveals the following: At the September 4, 2014, suppression hearing, the arresting officer, Trooper Shearn, testified he has received vehicle code enforcement and standardized field sobriety test training, and has been a state police officer for seven years, during which time he has encountered numerous individuals driving under the influence of drugs and alcohol. N.T., 9/4/2014, at 3-5. With respect to the underlying incident, Trooper Shearn stated that on March 18, 2012, he was patrolling the westbound lane of Interstate 76, when he observed Sheridan's vehicle cross over the center dotted line approximately four times, and then go back to the right lane, in quick succession. *Id.* at 6, 9.[7] The trooper indicated there were other cars on the road but very few based on the time of night. *Id.* at 9. He stated there was no construction, potholes, or other obstructions that would require evasive maneuvering. *Id.* Trooper Shearn testified crossing the center dotted line is an MVC violation

_____

[6] We note, "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1198 (Pa. 2005).

[7] The trooper specifically stated that for him "to consider a car crossing the line it doesn't just touch, it has to cross over the dotted line, … both tires across the center dotted line." *Id.* at 7.

under Section 3309. *Id.* at 10. The trooper followed Sheridan for approximately five miles until it was safe for him to activate his emergency lights and siren,[8] signaling to Sheridan to pull over. *Id.* at 10-11. Sheridan complied and pulled onto the shoulder of the road. *Id.* at 11.

Trooper Shearn stated that upon speaking with Sheridan, he noticed a strong odor of an alcoholic beverage on the defendant's breath and person. *Id.* at 15. Furthermore, the trooper observed Sheridan to have bloodshot, glassy eyes and slurred speech. *Id.* Trooper Shearn then asked Sheridan to exit the car and perform standardized field sobriety tests, which the defendant agreed to do. *Id.* at 16. The trooper testified, "[Sheridan] did not perform the tests as instructed and based on my training, education and experience[,] it was my opinion that he was incapable of safe driving and placed him under arrest for DUI." *Id.*

On cross-examination, the trooper stated he did not observe Sheridan speeding, and the defendant was not inconsistently accelerating or decelerating while operating the vehicle. *Id.* at 19. Nevertheless, Trooper Shearn indicated Sheridan was weaving within the lane but that is not an MVC violation. *Id.*

_____

[8] The video dash camera on the trooper's vehicle was turned on when he activated the lights. The video, therefore, did not depict all five miles of the monitoring.

Trooper Shearn also stated that while he could not recall from personal memory how many times Sheridan crossed the dotted center line, his written report from the stop provided that information. *Id.* at 20.

In reviewing the testimony, the trial court found the following:

Trooper Shearn testified that [Sheridan], while driving in the right lane, drifted into the left lane far enough so that both of his left tires crossed over the center dotted white line. Trooper Shearn further testified this happened three or four times in quick succession. This court finds that [Sheridan]'s observed behavior violates § 3309(1). Therefore, Trooper Shearn's first-hand view of [Sheridan]'s violation gave him probable cause to stop [Sheridan].

Order Sur: Suppression, 10/8/2014, at 3.

We agree with the court's sound rationale. As illustrated above, the evidence established Trooper Shearn possessed probable cause to stop Sheridan's vehicle for an MVC violation under Section 3309(1), where the trooper observed Sheridan cross over the dashed, white line multiple times with both left-side tires and then quickly return to his lane. *See* N.T., 9/4/2014, at 9. As such, Sheridan failed to operate his vehicle "as nearly as practicable entirely within a single lane" and prior to "first ascertain[ing] that the movement c[ould] be made with safety." 75 Pa.C.S. § 3309(1).[9]

---

[9] We find the facts in this case substantially similar to the following cases which have upheld the trial court's finding that the police officer possessed probable cause to stop the motorist: *Feczko*, *supra* (officer observed appellant weaving within his lane, crossing the double yellow center line twice, and drifting over the fog line); *Commonwealth v. Cook*, 865 A.2d 869, 874 (Pa. Super. 2004) (officer observed appellant's vehicle for nearly

*(Footnote Continued Next Page)*

Moreover, contrary to Sheridan's argument that his actions were *de minimis*, we reiterate that because the Commonwealth prevailed, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Jones**, 121 A.3d at 526. Accordingly, the trial court properly denied Sheridan's motion to suppress. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2015

*(Footnote Continued)* ————————————

one mile, during which the appellant's vehicle crossed the fog line by one-half of his vehicle width, then quickly jerked back into the lane of traffic); **Commonwealth v. Klopp**, 863 A.2d 1211 (Pa. Super. 2004) (police officer saw motorist weaved four times over one and one-half miles and each time, the car crossed over double yellow or fog lines); **Lindblom**, **supra** (officer observed defendant cross double center and berm lines four or five times each).