J-S43002-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES S. KARAM | |
| Appellant | No. 1031 WDA 2016 |

Appeal from the Judgment of Sentence Entered June 16, 2016
In the Court of Common Pleas of Butler County
Criminal Division at No: CP-10-CR-0001593-2015

BEFORE:  STABILE, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                 FILED: SEPTEMBER 29, 2017

Appellant, James S. Karam, appeals from the June 16, 2016 judgment

of sentence imposing six months of intermediate punishment for driving

under the influence, 75 Pa.C.S.A. § 3802(a)(2).  We affirm.

The trial court summarized the pertinent facts:

> Shortly before 1:53 a.m. on May 3, 2015, while working a
> roving DUI patrol, Trooper [Robert] Downs was turning off of
> Lions Road onto New Castle Road in Butler Township when he
> noticed two motorcycles at the stop sign on Greenwood Drive.
> The motorcycles accelerated rapidly from the stop sign to a high
> speed.  They emitted a loud noise as they did so.  Trooper
> Downs observed the motorcycles approach the then blinking red
> light at the intersection of New Castle Road and Route 356 near
> the entrance to the Moraine Point Plaza.  The motorcycles slowed

_____

[*] Former Justice specially assigned to the Superior Court.

and rolled through the blinking red light without either of the operators putting their feet on the ground. The motorcycles proceeded to travel south on Route 356. Trooper Downs noticed that the motorcycle on the left was swerving within the right travel lane and it appeared to him that the motorcycle crossed into the center lane more than once as it traveled between the Moraine Point Plaza and Duffy Road. The motorcycles then turned right onto Duffy Road. It appeared to Trooper Downs that the left motorcycle made the turn from the lane that was designated for straight travel only. Trooper Downs activated his overhead lights just after the motorcycles turned onto Duffy Road. The motorcycles pulled over. The left motorcycle—the one which Trooper Downs had observed swerving and which he believed he had observed making an improper turn—was operated by [Appellant], and there was a passenger on the back. The other motorcycle sped away as Trooper Downs approached. After reviewing the video from his mobile video recorder at the time of the suppression hearing, Trooper Downs testified that it appeared from the video that [Appellant's] motorcycle crossed from the straight line into the turning lane just before it turned right onto Duffy Road.

Trial Court Opinion, 1/21/17, at 1-2.

Appellant submitted to a breath test, which revealed a .095% blood alcohol content. Appellant was arrested and charged with DUI and several other Vehicle Code violations. Prior to trial, he filed a motion to suppress the evidence of his BAC, reasoning that Trooper Downs lacked probable cause to stop him for any vehicle code violation. The trial court denied that motion. The case proceeded on stipulated facts, and the trial court found Appellant guilty of DUI and sentenced him as set forth above. This timely appeal followed. The sole issue before is whether the trial court erred in finding that Trooper Downs had probable cause to stop Appellant for a Vehicle Code violation.

We review the trial court's order as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010). The scope of our review is limited to the evidence produced at the suppression hearing. In re L.J., 79 A.3d 1073, 1079 (Pa. 2013).

Instantly, Trooper Downs stopped Appellant for violations of §§3309 and 3714[1] of the Motor Vehicle Code. Neither violation required further investigation. Thus he was required to have probable cause in support of his

_____

[1] Section 3309 provides in relevant part: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa. C.S.A. § 3309(1). Section 3714 provides: "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714(a).

vehicle stop. 75 Pa.C.S.A. § 6308(b); Commonwealth v. Chase, 960 A.2d 108 (Pa. 2008); Commonwealth v. Feczko, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc), appeal denied, 25 A.3d 327 (Pa. 2011). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." Commonwealth v. Salter, 121 A.3d 987, 994 (Pa. Super. 2015) (quoting Commonwealth v. Spieler, 887 A.2d 1271, 1275 (Pa. Super. 2005)). "The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Vehicle Code." Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004) (quoting Commonwealth v. Mickley, 846 A.2d 686, 689 (Pa. Super. 2004), appeal denied, 860 A.2d 489 (Pa. 2004)), appeal denied, 868 A.2d 1198 (Pa. 2005). "[W]hile an actual violation of the [Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Vehicle Code] in order to lawfully stop the vehicle." Spieler, 887 A.2d at 1275.

Appellant argues that Trooper Downs did not have probable cause for the vehicle stop because his Vehicle Code infractions were momentary and minor. Appellant also noted that video footage from Trooper Downs' vehicle demonstrates that Appellant veered from the center lane to the right turn

- 4 -

lane shortly before making his right turn. Appellant asserts that his Vehicle Code infractions did not place anyone in any danger. Thus, Appellant argues Trooper Downs had no probable cause to stop Appellant for a violation of § 3309(1).

Appellant relies on Commonwealth v. Cook, 865 A.2d 869 (Pa. Super. 2004), appeal denied, 880 A.2d 1236 (Pa. 2005), for the proposition that "[w]hether an officer possesses probable cause to stop a vehicle for a violation of this section depends largely upon on whether a driver's movement from his lane is done safely." Commonwealth v. Cook, 865 A.2d 869, 874 (Pa. Super. 2004). Probable cause existed for a stop under § 3309 in Cook, where the defendant crossed the fog line by several feet and where the arresting officer had information from dispatch that the defendant was seen driving erratically. Id. In contrast, crossing the white fog line by six to eight inches twice over the span of a quarter mile was insufficient to create probable cause. Id. at 874 (citing Commonwealth v. Gleason, 785 A.2d 983 (Pa. 2001), superceded by statute as stated in Commonwealth v. Holmes, supra).

The trial court cited Lindblom, in which police stopped the defendant for careless driving after the defendant weaved over the double yellow line four or five times and crossed the berm four or five times. Lindblom, 854 A.2d at 606. The trial court suppressed the evidence of the defendant's drunkenness, reasoning that the alleged careless driving did not create a

safety hazard to any other vehicles. Id. at 607. This Court disagreed: "[W]hile opposing traffic may not have been present during the entire time [the witness] observed [the defendant] driving, we note that a motorist may be stopped for reckless driving even if the only concern is for the motorist's own safety." Id. at 608 (emphasis added).[2]

The Lindblom Court quoted our Supreme Court's assessment of the competing interests involved in a vehicle stop:

> The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those who travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court[.]

Id. at 607-08 (quoting Commonwealth v. Whitmyer, 668 A.2d 1113, 1116 (Pa. 1995) superceded by statute as stated in Holmes, 14 A.3d 89).[3]

At the suppression hearing, Trooper Downs testified that Appellant's motorcycle was weaving from left to right as Trooper Downs followed. N.T. Hearing, 1/6/16, at 5. In so doing, Appellant crossed the centerline. Id. at

_____

[2] In the quoted language, this Court referred to "reckless" driving (see 75 Pa.C.S.A. § 3736), but the opinion makes clear that the defendant in Lindblom was charged with careless driving, as was Appellant in the instant case. Lindblom, 854 A.2d at 605 n.2.

[3] The superseding statute is an amended version of 75 Pa.C.S.A. § 6308(b). The amendment does not affect our probable cause analysis in the instant case.

- 6 -

5, 17. Trooper Downs acknowledged that Appellant's weaving several crossings of the centerline were only momentary and were "minor" compared to what he had seen in approximately 800 to 1,000 DUI arrests. Id. at 17-18. Nonetheless, Trooper Downs stated he was concerned with the safety of Appellant's passenger. Id. at 18, 20, 22.

Upon review of video footage of Appellant's faulty turn, Trooper Downs acknowledged that Appellant crossed into the turning lane just before making his turn:

> Q. Trooper Downs, we just saw the video in this case, and to the point where [Appellant] makes that right onto South Duffy Road is it still your intention [sic] he turned from the wrong lane?
>
> A. He started in the lane that goes straight and then right at the end he goes over into the turning lane.

Id. at 11.

Earlier in his pursuit of Appellant, the record reflects that Trooper Downs observed Appellant "roll through" a blinking red light:

> They came to the light there at the big intersection where Sam's Plaza and the new Dicks and stuff is going in. It was a blinking red light. They came to the light. They stopped, but they didn't stop, they didn't put their feet down, they kind of rolled through.

Id. at 5. Trooper Downs did not find this infraction significant enough to initiate a stop, nor did the Commonwealth charge Appellant with failing to stop at the flashing red light pursuant to 75 Pa.C.S.A. § 3114(a)(1).

We conclude that Trooper Downs had probable cause to stop Appellant for careless driving under § 3714(a), in accord with this Court's opinion in Lindblom. Careless disregard for the safety of others under § 3714(a) occurs where the defendant engages in less than willful or wanton conduct but more than ordinary negligence or mere absence of care under the circumstances. Commonwealth v. Gezovich, 7 A.3d 300, 301 (Pa. Super. 2010). As recounted above, Appellant rolled through a blinking red light, weaved left and right while crossing the centerline several times, and failed to move from the center lane to the right turn lane until just before making a right turn, all while carrying a passenger on his motorcycle. These transgressions, taken in tandem, were sufficient to give Trooper Downs probable cause to believe Appellant engaged in careless driving, i.e. that he exhibited more than mere negligence or lack of ordinary care.

Appellant's argument to the contrary depends largely upon his assertion that no pedestrians or vehicles (other than Appellant's companion on the other motorcycle) were present. Appellant argues, therefore, that he did not create a safety hazard. The trial court disagreed, based on Appellant's "erratic driving which was observed over a distance of approximately one mile." Trial Court Opinion, 1/21/16, at 5. We discern no reversible error in the trial court's ruling. Indeed, Appellant simply ignores the risks that his persistent erratic driving posed to himself and the passenger he was carrying. We held in Lindblom that concern for the

safety of the driver is a sufficient basis to conduct a stop under § 3714. Lindblom, 854 A.2d at 608. Given the facts of record, the trial court did not err in finding that the motorcycle stop did not violate Appellant's constitutional rights.

Because we have found Appellant's sole argument lacking in merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Solano joins this memorandum.

Justice Fitzgerald concurs in the result.


Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2017