J-S28004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALCOM XAVIER ROGERS | : | No. 41 MDA 2019 |

Appeal from the Order Entered December 7, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003696-2018

BEFORE: BOWES, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.: **FILED DECEMBER 20, 2019**

I respectfully disagree with the learned majority's conclusion that Reading Police Officer Hector Marinez articulated specific facts to demonstrate that he had probable cause to initiate the traffic stop of Malcom Rogers's vehicle for careless driving. Namely, unlike my esteemed colleagues, I do not believe that the certified record bears out that Rogers's driving created a probable risk of harm to persons or property.

The majority adeptly addressed our standard of review and outlined the level of suspicion that Officer Marinez was required to possess in order to effectuate a constitutionally firm traffic stop of Rogers's vehicle for careless driving under § 3714(a). Accordingly, I do not revisit those principles herein. However, for ease of discussion, I reiterate that careless driving requires a

_____

[*] Retired Senior Judge assigned to the Superior Court.

careless disregard for the safety of others, which occurs when the defendant engages in less than willful or wanton conduct but more than mere negligence or lack of ordinary care under the circumstances. *Commonwealth v. Gezovich*, 7 A.3d 300, 301 (Pa.Super. 2010). Instantly, the trial court concluded that, "given all of the evidence," Rogers's actions in "spinning wheels" did not give rise to probable cause of careless driving. Findings of Fact and Conclusions of Law, 12/7/18, at 4. In light of the testimony that the incident occurred in an area that was not adjacent to people or property, and the fact that Officer Marinez did not testify that Rogers's car moved during the burnout, I would not disturb the suppression court's determination.

Essentially, I believe that Officer Marinez's testimony falls short of the evidence of probable cause adduced in *Commonwealth v. Venable*, 200 A.3d 490 (Pa.Super. 2018), which the majority cogently discusses. In *Venable*, this Court affirmed the trial court's finding that a police officer had probable cause to believe Venable was in violation of the careless driving statute because Venable's actions placed others at risk of harm. We reasoned,

> Upon review, we find that [the police officer's] observations of Appellant "spinning his tires, causing the rear end of the truck to kick out or fishtail into the other lane, and then accelerating very quickly west on High Street," were sufficient to give the [officer] probable cause to stop Appellant for careless driving.

*Venable*, *supra* at 499 (cleaned up).

Unlike the appellant in *Venable*, who clearly placed people and property at risk by causing his vehicle to fishtail into the lane designated for oncoming

- 2 -

traffic, Rogers stayed within his lane of travel and cannot be deemed to have acted with careless disregard for the safety of persons or property because neither was in the vicinity. Indeed, rather than articulate specific facts possessed by him that would support the inference of careless driving, Officer Marinez testified that the intersection was empty of automobiles and pedestrians, Rogers's vehicle remained in the correct lane of travel at all times, and was not at risk of striking a vehicle or person. N.T., 10/29/18, at 20-21. **Cf. Commonwealth v. Deily**, 344 A.2d 595 (Pa.Super. 1975) (finding sufficient evidence of reckless driving where "[t]he officer at the scene observed the vehicle lurch forward fishtailing and almost causing an accident").

Having reviewed the certified record for evidence that Rogers lost control of his vehicle or posed a danger to a person or property, and having found none, the trial court correctly concluded that, based upon the circumstances, the requisite probable cause did not exist for Officer Marinez to conduct a traffic stop for careless driving. Phrased differently, the Commonwealth failed to demonstrate that Rogers acted with "careless disregard for the safety of persons or property" sufficient to warrant the traffic stop. 75 Pa.C.S. § 3714(a).

The majority relies upon **Commonwealth v. Lindblom**, 854 A.2d 604, 608 (Pa.Super. 2004), for the proposition that the fact "[t]hat no other person or property was in sight [of Rogers's vehicle] is of no moment," and in

construing an implicit danger in Rogers's alleged "sudden acceleration and fast turn at [the] intersection." Majority Memorandum at 8. Police stopped Lindblom for careless driving after receiving information from another driver who observed Lindblom weave over the double yellow line and cross the berm line four or five times each. After initiating a traffic stop based upon this information, the police officer arrested Lindbom for driving under the influence of alcohol. The trial court suppressed the evidence of Lindblom's intoxication because the basis for the stop, the alleged careless driving, did not create a safety hazard to any other people or property. *Id*. at 607. The Commonwealth appealed, and we reversed. Referencing evidence that Lindblom engaged in prolonged erratic driving, this Court concluded that the police officer had probable cause to believe that Lindblom committed careless driving, even absent evidence of opposing traffic, because Lindblom's erratic driving placed his own safety at risk. *Id*. at 608. The majority embraces this position in the case at bar, but ignores the dearth of evidence concerning prolonged erratic driving or a likely risk of harm to a person (including Rogers) or property at the intersection. Instead, it surmises what might have occurred **if** people or vehicles had been present, which they were not. In contrast to my learned colleagues, I would reject this conjecture absent some additional evidence of a safety hazard like the prolonged erratic driving that we discussed in **Lindblom**. **Id**. (quoting **Commonwealth v. Slonaker**, 795 A.2d 397, 401

(Pa.Super.2002)) (Lindblom's driving was "significantly less benign" than the facts outlined in [**Commonwealth v**.] **Gleason**, [785 A.2d 983 (Pa. 2001)])."

By way of comparison, there is a safety component in driving on roadways laned for traffic under § 3309(a) that is similar to the analogous element in careless driving insofar as that statute permits a driver to leave the lane of travel if the movement can be performed safely. **See Gleason**, **supra**, *superseded by 75 Pa.C.S. § 6308(b) as to level of suspicion required to effectuate traffic stop as stated in* **Commonwealth v. Holmes**, 14 A.3d 89, 94 n.12 (Pa. 2011). **See also Commonwealth v. Enick**, 70 A.3d 843, 847 (Pa. Super. 2013) (language of section 3309(1), which requires motorists to maintain a single lane "as nearly as practicable," "does not foreclose minor deviations"); and **Commonwealth v. Cook**, 865 A.2d 869, 874 (Pa.Super. 2004) ("Whether an officer possesses probable cause to stop a vehicle for a violation of . . . section [3309(1)] depends largely upon . . . whether a driver's movement from his lane is done safely."). A brief discussion of **Gleason** is warranted.

In **Gleason**, a police officer "observed [Gleason's car] cross the solid fog line on two or three occasions over a distance of approximately one quarter mile" but did not see any "other vehicles on the roadway." **Gleason**, **supra** at 985. Following a traffic stop, Gleason was arrested for driving under the influence of alcohol and related offenses. The trial court suppressed the evidence of intoxication because the police officer had insufficient grounds to

initiate the traffic stop "simply because he observed Appellant swerve onto the berm of the roadway two or three times." *Id*. We reversed the suppression court, but our Supreme Court overruled our decision. The High Court reasoned, "the lack of any evidence at the suppression hearing that [Gleason's] driving created a safety hazard leads us to agree with the trial court that there was insufficient evidence to support a Section 3309(1) violation." *Id*. at 989 (internal quotations omitted).

Subsequently, in **Commonwealth v. Garcia**, 859 A.2d 820 (Pa.Super. 2004), this Court confronted the constitutionality of a traffic stop based upon suspected violations of § 3309(1) and § 3301 (driving on the right side of the roadway) by synthesizing into a manageable standard the fact-sensitive principles that the High Court addressed in **Gleason** and we discussed in **Lindblom**, in relation to careless driving. Noting the *de minimis* nature of the safety hazards alleged by the interdicting police officer in that case, we reasoned,

> a close reading of the **Gleason** rationale, combined with careful attention to the facts of that case, lead us to conclude that where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted. Thus, appellant Gleason's crossing of the berm line on two occasions for a second or two were inadequate to support a traffic stop, while appellant Lindblom's repeated weaving within his lane, coupled with his driving over the center double lines and the berm line four or five times, provided probable cause to support a lawful traffic stop [for careless driving].
>
> Applying this "momentary and minor" standard to the facts of this case, we find that probable cause is lacking. Officer DeHoff observed [Garcia] drive over the right berm line of the road just

two times. Each time the maneuver was in response to another car coming toward appellant in the opposite lane of traffic. The conduct took place within a very short time period; Officer DeHoff observed appellant for only two blocks before making the stop.

*Id*. at 823 (footnote omitted).

While the **Garcia** Court applied the "momentary and minor" standard to its review of a traffic stop effectuated due to the driver's failure to stay within the designated lane of traffic, that court's discussion of our holding in **Lindblom** confirms that comparable safety-related principles exist where a stop is initiated based upon alleged careless driving. *Id*. at 823; **see also Gezovich**, **supra** at 302 ("The evidence simply does not establish . . . heightened type of carelessness necessary to sustain a conviction for careless driving.").

Instantly, I believe that Officer Marinez's allegations are insufficient insofar as there is no evidence that Rogers posed a threat to people or property when he performed the burnout. Thus, through the prism of **Garcia**, I view the facts adduced at the suppression hearing as aligning closer to the facts underlying the Supreme Court's decision in **Gleason** rather than our holding in **Lindblom**.

First, unlike **Lindblom**, Appellant did not engage in persistent erratic driving over a significant distance and there is **no** indication that Rogers placed his own safety at risk. He performed the burnout while stopped at the intersection and the Jeep remained within in the designated lane of travel. N.T., 1/9/19, at 20. Indeed, Officer Marinez did not testify that the car moved

while Rogers was performing the maneuver. *Id*. Then, after spinning his wheels at an empty intersection, Rogers quickly executed a right-hand turn, and drove away. *Id*. at 8, 20.

In this vein, no evidence exists to support the majority's finding that Rogers performed a "prolonged burnout" and a "sudden acceleration." *See* Majority Memorandum at 4-5, 7-8. In actuality, Officer Marinez did not pinpoint the length of the burnout. He simply testified that, although he was uncertain of Rogers's intent, he believed that the maneuver was intentional due to its duration. N.T., 10/29/18, at 19. Nothing suggests that Rogers extended the maneuver beyond what was necessary for Officer Marinez to surmise an intent. Similarly, notwithstanding my esteemed colleagues' characterization of the burnout and acceleration into the intersection as one contemporaneous action, Officer Marinez not only neglected to indicate that the vehicle moved while Rogers performed the maneuver, but he also explained that Rogers was required to apply the vehicle's brake in order to accomplish it. Hence, while there was testimony about a potential for loss of control generally and a statement that Rogers made the turn at an unidentified "high rate of speed," the certified record bears out that Rogers's vehicle did not fishtail or accelerate forward when the burnout occurred. *Id*. at 20.

Finally, I highlight that Officer Marinez made his determination of Rogers's speed, which the trial court did not accept as a contributing factor, while viewing Rogers's vehicle in a rearview mirror from one block away during

a torrential downpour. *Id*. at 5, 16, 18. Indeed, on cross-examination, Officer Marinez conceded that, while the vehicle appeared to be moving fast from his vantage point, he could not determine how fast Rogers was going when he made the right-hand turn. *Id*. at 20-21. As noted, the trial court ultimately rejected the inference that the burnout involved dangerous speeds. Specifically, the court found "there was no evidence presented that . . . [Rogers] was driving at a higher rate of speed because of the 'burnout.'" Findings of Fact and Conclusions of Law, 12/7/18, at 4.

In sum, for the reasons explained *supra*, I agree with the trial court's conclusion that Officer Marinez's observations did not support the inference that Rogers's conduct violated the Vehicle Code. *See Gleason*, *supra*, at 898 (insufficient evidence to support probable cause determination for traffic stop where evidence did not demonstrate driving created safety hazard). As I believe that the certified record supports the suppression court's factual findings, and because the inferences that the court drew from those facts are reasonable, I would not disturb the court's conclusion.

I respectfully dissent.