J-S29008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
EVAN DAVIS　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　Appellant　　　　　:　No. 1028 WDA 2021

Appeal from the Judgment of Sentence Entered July 28, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0012350-2019

BEFORE:　PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:　　　　**FILED:  November 14, 2022**

In this case we are called upon to review the circumstances that led to the search of an automobile in which Evan Davis was a passenger, and which led to his multiple criminal convictions. After careful review, we affirm the judgment of sentence.

At approximately 4:00 PM on September 5, 2019, a confidential informant ("the CI") and an agent from the Pennsylvania Attorney General's Office used the CI's cell phone to arrange a purchase of $200 of heroin from a suspected drug dealer. The drug dealer instructed the CI to go to the Rolling Woods apartment complex in North Versailles, Pennsylvania. At approximately

_____

[*] Retired Senior Judge assigned to the Superior Court.

4:27 PM, the suspected drug dealer phoned the CI and gave additional instructions on where to park in the complex. The CI was to be in an undercover vehicle that was described to the suspected drug dealer.[1] As directed by the suspected drug dealer, the undercover vehicle was parked in a spot located in the designated area of the parking lot, with no other vehicles nearby. At approximately 4:41 PM, a black Lincoln entered the parking lot and proceeded directly to the undercover vehicle. After making minor adjustments, the black Lincoln parked close enough to the undercover vehicle so that the vehicles were within arm's reach of each other.

Meanwhile, Officer Norman Locke, a member of the North Versailles Township Police Department involved in the undercover investigation, was parked in a marked cruiser in a location where he could clearly observe the parking area. After the black Lincoln parked, the agents in the undercover vehicle exited and Officer Locke activated his emergency lights and approached the scene.

At the suppression hearing, Officer Locke testified that after he parked and walked up to the black Lincoln, he detected the odor of marijuana coming from the vehicle. The four occupants of the black Lincoln were removed from the automobile. Officer Locke observed bundles of marijuana in the pocket on the back of the driver's seat. Davis was seated in the rear passenger seat, and

_____

[1] The CI was not in the undercover vehicle but was at an off-site location. Rather, the undercover vehicle had law enforcement officers stationed inside.

when he exited the vehicle, police observed a firearm on the seat where he was seated. Also, sixty bags of heroin were recovered from the pocket on the back of the driver's seat. Upon his arrest Davis was searched at the scene and two bags of cocaine were recovered. During a search of Davis at the police station, heroin was discovered.

On December 30, 2019, the Commonwealth filed a criminal information charging Davis with one count each of Person Not to Possess a Firearm, Receiving Stolen Property ("RSP"), Carrying a Firearm without a License, Criminal Conspiracy, Possession with Intent to Deliver a Controlled Substance ("PWID"), and two counts of Possession of a Controlled Substance.[2] Davis filed an omnibus pretrial motion seeking to suppress physical evidence. A suppression hearing was held, and the trial court denied the motion on November 12, 2020.

After a non-jury trial, Davis was found not guilty of RSP and guilty of the remaining charges. On July 28, 2021, the trial court sentenced Davis to serve an aggregate term of incarceration of four to eight years. Davis filed a post-sentence motion, which the trial court denied. This timely appeal followed. Both Davis and the trial court have complied with Pa.R.A.P. 1925.

In his sole issue, Davis argues the trial court erred in denying his motion to suppress the evidence. **See** Appellant's Brief at 8-11. Davis contends the

---

[2] 18 Pa.C.S.A. §§ 6105(a)(1), 3925(a), 6106(a)(1), 903, 35 P.S. §§ 780-113(a)(30), and 780-113(a)(16), respectively.

- 3 -

search of the black Lincoln was illegal because it was based solely upon Officer Locke's observation of the odor of marijuana. *See id*. at 10. To support his claim that the evidence must be suppressed, Davis relies on our Supreme Court's recent decision in *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021) (holding that, following the enactment of the Medical Marijuana Act ("MMA"), "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances."). Upon review, we conclude the facts of this case render *Barr* distinguishable.

Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *See Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). While Pa.R.Crim.P. 581(H) provides that "[t]he Commonwealth shall have the burden ... of establishing that the challenged evidence was not obtained in violation of the defendant's rights[,]" it is nonetheless true that "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006).

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania have long required law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *See Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> Pennsylvania case law recognizes three categories of interaction between police officers and citizens. The first of these is a "mere encounter," or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond. The second category, an "investigative detention," must be supported by reasonable suspicion. This interaction subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The third category, an arrest or "custodial detention," must be supported by probable cause. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*) (citations and some quotation marks omitted).

Reasonable suspicion exists when there are specific and articulable facts that create a reasonable suspicion, based on the officer's experience, that there is criminal activity afoot. *See Commonwealth v. Sands*, 887 A.2d 261, 271-272 (Pa. Super. 2005). Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an

offense. **See Commonwealth v. Runyan**, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted).

The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances" and not individual factors. **See Runyan**, 160 A.3d at 837. Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. **See Commonwealth v. Lindblom**, 854 A.2d 604, 607 (Pa. Super. 2004).

Recently, in **Barr** our Supreme Court held that following the enactment of the MMA, "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." **Barr**, 266 A.3d at 44. In reaching its conclusion, the Court explained "the smell of marijuana indisputably can still signal the possibility of criminal activity[,]" and it "may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause…." **Commonwealth v. Barr**, 266 A.3d 25, 41 (Pa. 2021).

While "marijuana no longer is *per se* illegal in this Commonwealth" following passage of the MMA, "possession of marijuana [is] illegal for those not qualified under the MMA." **Barr**, 266 A.3d at 41. We are also mindful that pursuant to the MMA, unused medical marijuana is to be kept in its original

package, which is subject to labeling requirements. *See* 35 P.S. § 10231.303(b)(6), (8).

Here, the trial court addressed Davis's claim challenging the admission of evidence as follows:

> Under these circumstances, the officers had reasonable suspicion that criminal activity, by way of a drug deal, was underway. The meeting at the parking lot was at the suggestion the drug dealer, who was contacted by a reliable confidential informant. The black Lincoln arrived at the designated time and place of the apartment complex. There were no other vehicles parked in area of the planned drug transaction. Officer Locke smelled a strong odor of marijuana, but it was not that single fact, alone, that caused him and other task force members to approach the suspected drug dealer's vehicle. Heroin was observed in plain view, and defendant was found to be sitting on a firearm while he was being removed from the vehicle. [Davis's] reliance on *Commonwealth v. Barr*, 240 A.3d 1263 (Pa. Super. 2020) is misplaced under the circumstances of this case as police were relying on much more than merely the odor of marijuana to approach the suspects and place them under arrest.

Trial Court Opinion, 4/20/22, at 4.

Our review of the certified record reveals the trial court's reasoning is well supported. The odor of marijuana was not the sole factor that led police to search the vehicle. As the trial court noted, the police were aware that the CI, who was a reliable informant, set up a drug purchase on the day of the incident. *See* N.T., Suppression Hearing, 9/22/2020, at 6. The suspected drug dealer directed the CI to a specified location to complete the drug deal. *See id*. at 7. An undercover vehicle was described to the suspected drug dealer as the vehicle that the CI would be in. *See id*. at 9. At the designated time and location, undercover agents were waiting in the undercover car in an empty

portion of the parking lot as directed. *See id*. The vehicle in which Davis was found, the black Lincoln, arrived at the scene at a time indicated by the suspected drug dealer. *See id*. at 8.

Further, as explained by Officer Locke at the suppression hearing, the black Lincoln parked next to the undercover vehicle in a manner indicative of a drug transaction. *See id*. at 10-11. Upon approaching the black Lincoln, Officer Locke testified that he noticed the odor of marijuana emanating from the vehicle. *See id*. at 13-14. The entirety of the facts indicate that the odor of marijuana was not the sole fact to support a finding of probable cause. Rather, the totality of these circumstances, and the permissible inferences, are sufficient to warrant a person of reasonable caution to believe that a crime was being committed.

In addition, we observe Officer Locke stated that, while standing outside of the black Lincoln prior to the search of the vehicle, he observed bags and bundles of marijuana in a pocket on the back of the driver's seat. *See id*. at 15. Again, unused medical marijuana is to be kept in its original package, which is subject to labeling requirements. *See* 35 P.S. § 10231.303(b)(6), (8). Based upon his training and experience, the illegal nature of the marijuana packaged in bags and bundles in the rear pocket of the driver's seat was immediately apparent. Davis has not presented any contrary argument. Accordingly, we conclude that this fact adds further support to the

determination that probable cause existed, and Davis's contrary argument lacks merit.

Therefore, it is our determination that the suppression court properly denied Davis's motion to suppress the evidence. Consequently, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2022