J-S21024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL DISMAS MORRISROE | : | |
| | : | |
| Appellant | : | No. 1265 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 22, 2017
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000451-2015

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                          **FILED DECEMBER 23, 2020**

Appellant, Paul Dismas Morrisroe, appeals from the Judgment of

Sentence entered on February 22, 2017, after a jury convicted him of

Homicide by Vehicle while Driving Under the Influence (DUI) and numerous

related offenses.[1]  Appellant asserts that the trial judge should have recused

from this case and claims that the suppression court judge erred in denying

Appellant's Motions to Suppress.  After careful review, we affirm.

### Factual and Procedural Background

On June 2, 2015, after consuming alcohol for an extended period,

Appellant left a local bar to travel home.  While driving his truck, Appellant

struck and killed Dakota Heinaman (the "Victim"), who was driving his

motorcycle.  Appellant fled the scene.

---

[1] 75 Pa.C.S. § 3735(a).

The collision caused significant damage to Appellant's truck, which left a trail of deep gouges in the road as Appellant continued to drive. Smethport Police Officer Kyle Day, responding to the accident, followed this trail to a garage owned by Appellant.[2] Peering inside a window of the garage, the officer observed the truck and its extensive damage. Based on the officer's observations, as well as additional evidence from the accident scene, Pennsylvania State Police secured a search warrant for the garage.

Police investigating the accident made contact with Appellant at his nearby home. After observing signs of his impairment, the police arrested Appellant for suspicion of DUI. Police also secured a warrant to draw blood from Appellant. Following further investigation, the police secured additional warrants to search the contents of Appellant's truck, a cellphone discovered in the back seat of the truck, the mechanical operation and equipment of the truck, and Appellant's cellphone records.

On September 28, 2015, the Commonwealth charged Appellant with numerous crimes related to the accident: Homicide by Vehicle while DUI, Accidents Involving Death or Personal Injury, Homicide by Vehicle, four counts of DUI, Accident Involving Damage to Attended Vehicle, Driving on Right Side of Roadway, Driving on Roadway Laned for Traffic, Following Too Closely, Driving Vehicle at Safe Speed, Limitations on Overtaking on the Left, Careless

_____

[2] The garage was located adjacent to a rental property owned by Appellant. **See** N.T. Suppression, 3/9/16, at 41.

Driving, Reckless Driving, Duty to Give Information and Render Aid, and Immediate Notice of Accident to Police.[3]

On February 17, 2016, Appellant filed an Omnibus Pretrial Motion, which included several Motions to Suppress. According to Appellant, police illegally entered onto his property, and the evidence gleaned from this initial violation poisoned his arrest and each of the search warrants later secured by police. On April 29, 2016, following extensive hearing, argument, and briefing by Appellant and the Commonwealth, the Honorable William F. Morgan denied Appellant's Motions to Suppress.

The matter proceeded to trial. On May 16, 2016, prior to the commencement of jury selection, Appellant moved for recusal by the trial judge, the Honorable John H. Pavlock. According to Appellant, social media activity by his secretary created the appearance that Judge Pavlock was sympathetic to the Commonwealth's case. Judge Pavlock declined to recuse but noted that potential jurors' awareness of all social media activity concerning the case was relevant to the *voir dire* process.[4]

---

[3] 75 Pa.C.S. §§ 3735(a), 3742(a), 3732(a), 3802(a)(1),(d)(1)(i),(iii), (3), 3743(a), 3301(a), 3309(1), 3310(a), 3361, 3305, 3714(a), 3736(a), 3744(a), and 3746(a)(1), respectively.

[4] Appellant had moved previously for Judge Pavlock's recusal on several grounds. Motion to Recuse, 1/4/16 (asserting, *e.g.*, that Judge Pavlock had prosecuted Appellant some years before in an unrelated case and that Judge Pavlock maintained personal friendships with current and former members of the district attorney's office). The court denied the Motion. Order, 1/14/16; *see also* Trial Ct. Supplemental Op., 1/14/16 (concluding that Appellant's

On May 18, 2016, during jury selection, the trial court determined that it could not seat a fair and impartial jury in McKean County. The court therefore granted Appellant's request to change venue. On January 18, 2017, a trial commenced in Venango County with Judge Pavlock presiding. After trial, the jury convicted Appellant of all counts.[5]

On February 22, 2017, the trial court sentenced Appellant to an aggregate term of seven and one-half to fifteen years of incarceration. Appellant timely appealed, but this Court dismissed the appeal for failure to file an appellate brief. *Commonwealth v. Morrisroe*, 460 WDA 2017 (Per Curiam Order filed March 19, 2018).

Following collateral proceedings, the trial court reinstated Appellant's right to direct appeal. Appellant timely appealed, but newly appointed counsel sought leave to withdraw.[6] On May 21, 2020, this Court denied counsel leave to withdraw and directed counsel to submit an advocate's brief on Appellant's behalf. Counsel complied, and we now address Appellant's claims.

_____

Motion was both untimely and without merit). Since Appellant did not raise before us this basis for recusal, he has waived the issue, and we are without jurisdiction to consider whether Judge Pavlock erred in not recusing on the grounds that he had prosecuted Appellant when he was an attorney in the District Attorney's Office.

[5] The trial court addressed the summary offenses and found Appellant guilty of each summary offense except Driving Vehicle at Safe Speed and Limitations on Overtaking on the Left. *See* N.T. Trial, 01/26/17, at 114-115.

[6] *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

- 4 -

Appellant raises the following issues:

1. [Whether] the Honorable John H. Pavlock err[ed] in failing to recuse himself from the case, in particular in regard to the request made May 16, 2016[,] due to the actions of Judge Pavlock's secretary/assistant Ms. Trask[; and]

2. [Whether] the Honorable William F. Morgan err[ed] in denying Appellant's [p]re-trial Motion[s] to Suppress[:]

   a. The entry on the premises by [Officer] Kyle Day was illegal.

   b. The search warrant for the garage of Appellant was illegal.

   c. The arrest of Appellant was illegal.

   d. The search warrant for Appellant's blood was illegal.

   e. Other warrants obtained based on the fruits of the illegal warrants and arrest above[] were illegal.

Appellant's Br. at 15-16.

## **Motion for Recusal**

In his first issue, Appellant asserts that statements allegedly made by Judge Pavlock's secretary via social media created the appearance that Judge Pavlock could not fairly or impartially preside over his trial. *See id.* at 43-48. According to Appellant, her statements imply that the court was sympathetic to the Victim and, therefore, biased against Appellant. *Id.* at 47. There is no evidentiary support for this claim.[7]

---

[7] In passing, Appellant "also believes" that the trial court erred in denying his other recusal requests. Appellant's Br. at 48. We deem this further claim waived for lack of development. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008); *Commonwealth v. Luktisch*, 680 A.2d 877, 879 n.1 (Pa. Super. 1996); Pa.R.A.P. 2119(a)-(e).

"[W]e recognize that our judges are honorable, fair and competent." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998) (citation omitted). Thus, "[o]ur standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential." *Commonwealth v. Harris*, 979 A.2d 387, 391 (Pa. Super. 2009) (citation omitted). "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Commonwealth v. Dip*, 221 A.3d 201, 206 (Pa. Super. 2019) (citation omitted).

The party requesting recusal must "produce evidence establishing bias, prejudice or unfairness [that] raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Tedford*, 960 A.2d 1, 55-56 (Pa. 2008) (citation omitted). Absent evidence of record, we will not disturb the decision of the trial court to deny a motion to recuse. *See, e.g.*, *Dip*, 221 A.3d at 214-15 (declining to consider allegations that trial judge had financial stake in potential litigation against the district attorney's office or that judge's *ex parte* communications established bias where the Commonwealth failed to support allegations with evidence of record).

Upon our review of the record, we discern no evidentiary basis upon which to disturb the decision of Judge Pavlock to deny Appellant's motion to recuse based on his allegations that Judge Pavlock's secretary made biased or

prejudicial statements on social media.[8]  Prior to the commencement of jury selection in McKean County, Appellant asserted that these alleged statements "would potentially influence people [in the jury pool] who know she's your secretary[.]" N.T. Jury Selection, 5/16/16, at 13.  In response, Judge Pavlock permitted counsel for Appellant and the Commonwealth to question his secretary. *Id.* at 14.  Their questioning occurred off the record. *See id.* at 16.  At no point thereafter did Appellant seek to introduce evidence of these alleged statements into the record. *See id.* at 16-20.  Thus, Appellant did not meet his burden to demonstrate bias, prejudice, or partiality, and no relief is due on appeal.[9, 10]

**Motions to Suppress**

---

[8] The trial court did not address this specific claim for recusal in its Opinion. *See* Trial Ct. Pa.R.A.P. 1925(a) Op., 3/12/19, at 5 (addressing solely Appellant's prior request for recusal).

[9] In addition, we note that Judge Pavlock permitted counsel to pursue the matter further during *voir dire* and determined that if a potential juror had seen the alleged statements, "it would have bearing on whether that juror would be excused for cause or not." *Id.* at 19.

[10] The Code of Judicial Conduct prohibits judges and their staffs from discussing pending cases, and judges have the responsibility to ensure that staff members are aware of the provisions of the Code of Judicial Conduct. *See* Code of Judicial Conduct, Canon 2, Rule 2.10(C) ("A judge shall require court staff, court officials, and others subject to the judge's direction and control to refrain from making statements that the judge would be prohibited from making[.]").  We trust that the trial court in this case has ensured that its staff members are aware of the limitations that the Code of Judicial Conduct places on the staff members, especially when using social media.

In his second issue, Appellant contends that the trial court erred when it denied his several Motions to Suppress. *See* Appellant's Br. at 40-42, 48-59. According to Appellant, (1) Officer Day's entry onto his property was illegal; (2) probable cause did not support the warrant to search Appellant's garage; (3) probable cause did not support his warrantless arrest for suspicion of DUI; (4) the warrant to search Appellant's blood was illegal because it listed the wrong criminal statute; and (5) additional warrants secured by police during their investigation lacked probable cause or were otherwise defective. *See id.*

We review the suppression court's decision to deny a motion to suppress to determine "whether [its] factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Milburn*, 191 A.3d 891, 897 (Pa. Super. 2018) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the [suppression] record as a whole." *Commonwealth v. Freeman*, 150 A.3d 32, 34 (Pa. Super. 2016) (citation omitted). We are bound by the suppression court's factual findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. *Id.* at 35.

"Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions

are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.'" ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citations omitted). "Thus, the conclusions of law of the courts below are subject to our plenary review." ***Id.*** (citations omitted).

The Honorable William F. Morgan, who presided over Appellant's suppression Hearing, has authored a comprehensive, thorough, and well-reasoned Opinion addressing each of Appellant's suppression claims. After a careful review of the parties' arguments and the certified record, we adopt the Opinion as our own and affirm the suppression court's denial of relief. ***See*** Suppression Ct. Op., 5/19/16, at 9-10 (concluding that Officer Day's entry onto Appellant's property was legal; Appellant had no reasonable expectation of privacy in the garage because it was not curtilage, nor were there signs, fencing, or window coverings to conceal its contents);[11] 10-11 (concluding that probable cause supported the search warrant issued for garage because, as indicated within the four corners of the affidavit, police had followed a trail

_____

[11] Judge Morgan's decision addresses Appellant's claim as preserved. ***See*** Appellant's Pa.R.A.P. 1925(b) Statement, 3/14/2019; Omnibus Pretrial Motion, 2/17/16; Specificity Supplement to Omnibus Pretrial Motion, 3/8/16; Brief in Support of Motions to Suppress; 4/11/16. In his Argument to this Court, Appellant further avers that Officer Day's entry onto his property constituted a trespass because his garage is located a significant distance from the public road. Appellant's Br. at 48-49. Appellant did not preserve this specific claim below; thus, it is waived. Pa.R.A.P. 302(a). Moreover, even if it had been preserved, we would conclude that it its meritless. ***See Commonwealth v. Simmen***, 58 A.3d 811, 816 (Pa. Super. 2012) (holding that an individual does not have a reasonable expectation of privacy in a driveway "accessible to the general public").

of damaged road from the accident site to garage and observed significant damage to Appellant's truck parked within);  11-13 (concluding that probable cause supported the warrantless arrest of Appellant for suspicion of DUI after police officers observed signs of Appellant's intoxication and Appellant made inconsistent statements regarding the location of his truck and the location of keys to his garage); 13-14 (concluding that technical violation—listing incorrect criminal statute—in affidavit of probable cause for search warrant of Appellant's blood did not necessitate suppression because affidavit contained all relevant facts to establish probable cause); and 14-18 (concluding that probable cause supported issuance of the other search warrants; affiants had reasonably trustworthy information).

## **Conclusion**

Appellant did not support his claim for recusal with evidence of record. We discern no error in the suppression court's decision to deny Appellant's Motions to Suppress.  For these reasons, we affirm Appellant's Judgment of Sentence.

We direct the parties to annex the suppression court's May 19, 2016 Opinion to any future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/2020</u>

# MAY 19, 2016 OPINION – SUPPRESSION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE COURT OF COMMON PLEAS OF |
| vs. | McKEAN COUNTY, PENNSYLVANIA |
| PAUL D. MORRISROE, | CRIMINAL DIVISION |
| Defendant. | No. 451 CR 2015 |

## OPINION AND ORDER

Before the Court is Defendant Paul D. Morrisroe's Motion to Suppress which was filed on February 17, 2016. The Commonwealth filed its Answer to Defendant's Motion to Suppress on March 4, 2016 and in response the Defendant filed a specificity supplement to the Motion to Suppress on March 8, 2016. After four days of extensive hearing and argument, the Court directed both parties to file briefs by April 11, 2016. The Court received briefs from both parties and the matter is now ready for decision.

## I. BACKGROUND

On June 2, 2015, Officer Kyle Day of the Smethport Police Department was working the evening shift when a call came into the McKean 911 Center about a serious crash on Route 646 near the town of Cyclone in McKean County, PA. When officers arrived at the scene, Dakota Heinaman (hereinafter "Victim") was found on the ground nearby his orange motorcycle. The Victim perished at the scene due to injuries sustained from the collision. A vehicle, described as a white or silver Dodge truck with a ladder rack, had reportedly fled the scene heading towards Smethport. As Officer Day was travelling on Route 59 toward the accident scene, he encountered Pennsylvania State Police ("PSP") Trooper Alex Wussman. Trooper Wussman went to the accident scene and Officer Day continued the search for the vehicle involved in the crash. Officer Day travelled on Route 59 and onto Route 646 and then turned onto Bingham Road.

On Bingham Road, Officer Day observed a gouge mark in the roadway and he continued to follow the gouge mark. The gouge was traced onto Route 59 in a westerly direction and then turned north onto Sunny Lane. At the turn, the mark was more distinct. Officer Day traveled on Sunny Lane to a cleared area which contained a house, a garage, and a parking area. Officer Day followed the gouge mark up and onto the apron of the garage to the overhead garage door. The gouge mark appeared to be "V" shaped and was consistent with the mark Officer Day had traced from the accident scene.

Officer Day then looked into the windows of the garage with his flashlight and saw what appeared to be a heavier silver Ford type truck. The right front tire was off the rim and there was damage to the passenger side front area of the vehicle. The damage to the front passenger tire and rim was significant. After looking into the garage, Officer Day contacted PSP Trooper Mary Gausman and he remained outside the garage. While outside the garage, Officer Day ran the plate on a trailer parked nearby which came back as being registered to Morrisroe Construction.

When PSP Trooper Ryan T. Marcinko and PSP Trooper Danielle Marshall met Officer Day at the Morrisroe property to investigate the crash, they reported that the crash involved a fatality. Trooper Marcinko observed a nick in the cement apron of the garage and saw a tire about twenty (20) yards from the garage with slashes in it. Trooper Marcinko and Trooper Marshall looked into the window of the garage with flashlights and observed damage to a silver Ford truck, the damage being to the truck's right rim and front passenger side tire and bumper. Trooper Gausman was advised by Officer Day, Trooper Marcinko, and Trooper Marshall of the damage they observed to the truck in the garage, the gouge mark seen on the roads leading to the Defendant's property, and statements made by the tenants of the house on the property as to the

2

owner of the garage. From this information, Trooper Gausman applied for a search warrant of the garage.

PSP Corporal Lance Schimp and Trooper Gausman arrived at the property around 3:00 a.m. on June 3, 2015 to execute the search warrant of the garage. Corporal Schimp, Trooper Gausman, Trooper Marcinko, and Officer Day walked from the garage to the Defendant's house in the hopes that the owner would have a key to the garage. Corporal Schimp repeatedly knocked on the front door and could see someone through the front porch window who appeared to be sleeping on the couch. After the Defendant awoke and came to the door, Corporal Schimp advised him that they were there to investigate a crash and that they had a search warrant for the garage. The Defendant stated that his keys were in the truck, which was in the garage. Corporal Schimp smelled an odor of alcohol emanating from the Defendant's person and saw that he appeared slow and sluggish. The Defendant did not permit the officers to enter when he went back into the house to change clothes. He then walked down his driveway with the officers and down Sunny Lane to the garage. The Defendant stated again that the keys to the garage were in the truck.

Corporal Schimp went to get his breaching equipment but first returned to the Defendant's house to see if the Defendant's paramour, Beth Esch, would know where the keys were. Ms. Esch stated that the Defendant would be the one who had the keys and that were no spare keys. Ms. Esch claimed that she had not seen the Defendant since the morning. After speaking with her, Corporal Schimp ruled out Ms. Esch as a possible driver of the vehicle. Meanwhile at the garage, the Defendant stated that the last time he saw his truck it was parked in front of his house. At this point, Trooper Marshall was able to enter the garage by climbing through an unlocked window. She went around and opened the man-door to the garage from

3

inside, Corporal Schimp entered the garage and observed the gouge mark leading to the Ford truck and the damage to the body of the truck and the rim of the wheel.

Based on his observations of the Defendant throughout the early morning, Corporal Schimp ordered Trooper Marcinko to arrest the Defendant for suspicion of DUI. The Defendant was then placed into a patrol car and was transported to Bradford Regional Medical Center for a blood draw. At the hospital, the Defendant refused the blood draw. Defendant was then transported to the State Police Barracks in Kane for the purpose of undergoing an evaluation of impairment by PSP Corporal Theodore Race. The Defendant refused to participate in the evaluation. However, Corporal Race was able to observe the Defendant, which led Corporal Race to conclude that the Defendant showed signs of impairment.

In the early hours of the morning, crash re-constructionist PSP Corporal Kurtis Rummel left the scene of the accident and arrived at the Defendant's property at approximately 12:37 a.m. Corporal Rummel compared damage to the Defendant's silver Ford truck with debris found at the crash scene. Further, Corporal Rummel detected an orange paint transfer onto the Defendant's silver Ford truck. This paint transfer was believed to be from the victim's orange motorcycle during the collision. He also found a connection between the path that the truck took at the scene (determined by marks and debris) and the location of the damage on the truck.

During the morning hours, Trooper Gausman applied for three (3) additional search warrants to search the contents of the Defendant's Ford Truck, the Defendant's blood, and the Black LG flip phone that was in the back seat of the truck belonging to someone other than the Defendant. Trooper Craig Needham and Corporal Rummel applied for warrants for the mechanics of the truck and the cell phone records of the Defendant.

4

The Defendant was arrested on the following charges:

1. Homicide by Vehicle While Under the Influence of Alcohol or Controlled Substance
   75 Pa.C.S. § 3735(a) – Felony 2nd Degree

2. Accidents Involving Death or Personal Injury
   75 Pa.C.S. § 3742(a) – Felony 2nd Degree

3. Homicide by Vehicle
   75 Pa.C.S. § 3732(a) – Felony 3rd Degree

4. Driving Under the Influence of Alcohol or Controlled Substance
   75 Pa.C.S. § 3802(d)(1)(i) – Misdemeanor

5. Driving Under the Influence of Alcohol or Controlled Substance
   75 Pa.C.S. § 3802(d)(1)(iii) – Misdemeanor

6. Accident Involving Damage to Attended Vehicle/Property
   75 Pa.C.S. § 3743(a) – Summary

7. Driving on Right Side of Roadway
   75 Pa.C.S. § 3301(a) – Summary

8. Driving on Roadways Laned for Traffic
   75 Pa.C.S. § 3309(1) – Summary

9. Following Too Closely
   75 Pa.C.S. § 3310(a) – Summary

10. Driving Vehicle at Safe Speed
    75 Pa.C.S. § 3361 – Summary

11. Limitations on Overtaking on the Left
    75 Pa.C.S. § 3305 – Summary

12. Careless Driving
    75 Pa.C.S. 3714(a) – Summary

13. Reckless Driving
    75 Pa.C.S. 3736(a) – Summary

14. Duty to Give Information and Render Care
    75 Pa.C.S. 3744(a) – Summary

15. Immediate Notice of Accident to Police Department
    75 Pa.C.S. 3746(a)(1) – Summary

16. Driving Under the Influence of Alcohol or Controlled Substance
    75 Pa. C.S. § 3802(d)(3) – Misdemeanor

17. Driving Under the Influence of Alcohol or Controlled Substance
    75 Pa.C.S. § 3802(a)(1) – Misdemeanor

5

217

## II. AUTHORITY

"Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." Commonwealth v. Lindblom, 854 A.2d 604, 605 (Pa. Super. 2004). "The preponderance of evidence standard 'is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence.'" Ferri v. Ferri, 854 A.2d 600, 603 (Pa. Super. 2004) quoting Commonwealth v. Brown, 786 A.2d 961, 968 (Pa. 2001). The Pennsylvania Supreme Court has held that "a defendant at a suppression hearing has the right to test the veracity of the facts recited in the affidavit in support of probable cause. Commonwealth v. James, 69 A.3d 180, 187 (Pa. 2013); Citing Commonwealth v. Hall, 302 A.2d 342, 344 (Pa. 1973).

Further in James, the Pennsylvania Supreme Court explained:

"[w]e begin by examining Rule 203, which provides:

(B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. *The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.*

* * *

(D) *At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).*

Pa.R.Crim.P. 203(B), (D) (emphasis added). The rule plainly states the issuing authority may not consider evidence outside the affidavit in making the probable cause determination, and the suppression court, in reviewing this determination, may only

6

consider the affidavit. *Id.; see* Commonwealth v. Edmunds, 586 A.2d 887, 891 (Pa. 1991) (noting, under Rule 203's predecessor, courts shall not consider oral testimony outside four corners of written affidavit to supplement finding of probable cause for search warrant)." James, 69 at 187. "Probable cause to support issuance of a search warrant is present where facts and circumstances within the affiant's knowledge, of which he has reasonable trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in belief that a search should be conducted." Commonwealth v. Bruner, 564 A.2d 1277, 1282 (Pa. Super. 1989); Citing Commonwealth v. Bonasorte, 486 A.2d 1361 (Pa. Super. 1984).

It is well established that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." Commonwealth. v. Simmen, 58 A.3d 811, 815 (Pa. Super. 2012); *Citing* Commonwealth v. Gibbs, 981 A.2d 274, 279 (Pa. Super. 2009). As stated in Simmen, the courts have extended the constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." Simmen, 58 at 815. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." Simmen, 58 at 815; Citing Commonwealth v. Fickes, 969 A.2d 1251, 1256 (Pa. Super. 2009). In Commonwealth v. Cihylik, 486 A.2d 987, 992 (Pa. Super. 1985), the Pennsylvania Superior Court addressed curtilage in explaining the distinction between dwelling houses and business offices:

> Curtilage, discussed above, means a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs; the term has no application to any building not used as a dwelling....
> Whereas, the term "house" within the Fourth Amendment may include a business office or store, ... the concept of curtilage does not apply to buildings other than dwellings.... Thus, the backyard

7

of the defendant's business premises would not be afforded the
same protection as part of the curtilage of a dwelling.

Id.; *Citing* United States v. Wolfe, 375 F.Supp. 949, 958 (E.D.Pa. 1974). The term "open fields"
has been defined as "privately owned grounds or outbuildings which are not located in close
proximity to the owner's dwelling." Cihylik, 486 at 993.

In Commonwealth. v. Ruey, 892 A.2d 802, 815 (Pa. 2006), the Pennsylvania Supreme
Court explained how technical violations in an affidavit of probable cause do not always equate
to suppression. The Pennsylvania Supreme Court stated:

> We take the opportunity that the instant case presents to accord legal significance to the
> common-sense distinction between the absence of probable cause and the mere lack of a
> full and complete articulation of the same. The failure of Trooper Bryan to comply fully
> with the requirements of Pennsylvania Rule of Criminal Procedure 206 in no way
> negated the fact that the district justice who issued the first warrant had a substantial basis
> for concluding that probable cause existed to suspect Appellant of having committed the
> various DUI-related offenses with which he was ultimately charged. However
> procedurally imperfect the Bryan Affidavit may have been, there is simply no reason why
> the district justice should not be permitted to draw the substantive conclusion that the
> facts and circumstances included in that Affidavit so strongly compelled.

Defendant also challenges the issuance of the arrest warrant on the charge of driving
under the influence, enumerated at 75 Pa.C.S. §3802(a)(1). Pursuant to 75 Pa.C.S. § 3802(a)(1),
"[a]n individual may not drive, operate or be in actual physical control of the movement of a
vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered
incapable of safely driving, operating or being in actual physical control of the movement of the
vehicle. 75 Pa.C.S. § 3802(a)(1).

In Commonwealth v. Segida, 985 A.2d 871, 879 (Pa. 2009), the Pennsylvania Supreme
Court stated:

> "[T]he types of evidence that the Commonwealth may
> proffer in a subsection 3802(a)(1) prosecution include but are not
> limited to, the following: the offender's actions and behavior,
> including manner of driving and ability to pass field sobriety tests;

8

demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech." '

Id.

## III. DISCUSSION

### A. Officer Day's Entry onto the Morrisroe Property was Legal

Defendant asserts that Officer Day's entry onto the Morrisroe property without a warrant was illegal. The issue is whether Officer Day's entry onto the Morrisroe property was legal or illegal. As stated in Simmen above, "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." Simmen, 58 at 815. Additionally, the courts have extended the constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." Simmen, 58 at 815. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." Simmen, 58 at 815. The question would be whether the curtilage extends to the garage.

As stated in Cihylik, curtilage is defined as:

"... a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs; the term has no application to any building not used as a dwelling....Whereas; the term "house" within the Fourth Amendment may include a business office or store, ... the concept of curtilage does not apply to buildings other than dwellings.... Thus, the backyard of the defendant's business premises would not be afforded the same protection as part of the curtilage of a dwelling."

Cihylik, 486 at 992.

9

Here, the garage in question was near the Defendant's rental property and not his actual dwelling house, which was located several hundred yards away. Thus, the Defendant's rental property would not be afforded the same protection as would be accorded to the curtilage of his dwelling house.

Further, there were no signs or fences near the garage or surrounding area such as "No Trespassing" or "Private Property". The garage windows were not covered and there were no attempts to conceal the contents of the garage, which would indicate an expectation of privacy. The area directly next to the garage window in question was a parking area for the tenants at the house, for which there was no expectation of privacy. Also, a dumpster for the tenants' use is located next to the garage and in the area of the window through which Officer Day observed the damaged truck. For the reasons stated above, Officer Day's entry onto the property was legal and not restricted.

## B. There was Sufficient Probable Cause for the Search Warrant for the Garage

Defendant asserts that the search warrant of the Defendant's garage is defective, as it does not indicate, within its four corners, probable cause to believe that the vehicle in the garage on Sunny Lane was involved in the accident in question. He also argues that the veracity of the allegations made by the officers did not survive the scrutiny of examination at the hearing. As stated above in James, Pa. Rule of Criminal Procedure 203(b) states "[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." James, 69 at 187. "Probable cause to support issuance of a search warrant is present where facts and circumstances within the affiant's knowledge, of which he has reasonable trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in belief that a search should be conducted." Bruner, 564 at 1282.

10

Trooper Gausman filled out the application for the search warrant to search the Defendant's garage (Commonwealth's Exhibit No. 16). The Court must determine whether she was reasonable in accepting the information from other officers upon which she relied. The affidavit of probable cause for the search warrant contains information about the investigation and what steps Officer Day took, which led him to the Defendant's property and ultimately to the Defendant's garage. This Court cannot imagine a clearer case than this where a visible track ran directly from the accident site to the garage and right up to the tireless truck rim which had caused the track. Additionally, the affidavit of probable cause included the observations of Trooper Marcinko and Officer Day about the silver Ford truck inside the Defendant's garage which they had observed from outside any curtilage. The truck was completely missing a tire, had a damaged rim, and there was damage to the passenger side front area of the vehicle. The information from Officer Day and Trooper Marcinko that Trooper Gausman received and relied upon did not contain any obvious unreasonable, inconsistent, or untrustworthy information. Therefore, Trooper Gausman listed those assertions in the affidavit. Here, the Magisterial District Judge ("MDJ") had to find probable cause within the four corners of the affidavit which included information about what the officers saw in the garage window, the trail from the crash scene leading to the Defendant's garage, and the damaged vehicle inside the garage that was missing the tire. The Court finds that the MDJ correctly found that the affidavit contained sufficient probable cause for the search warrant to be issued.

## C. The Arrest of the Defendant was Legal

Defendant also challenges the issuance of the arrest warrant on the charge on the charge of driving under the influence, 75 Pa.C.S. 3802(a)(1). Defendant asserts that there was no evidence presented to support that Trooper Marcinko himself had probable cause to arrest the

11

223

Defendant. In a recent opinion by the Pennsylvania Superior Court, Commonwealth v. Yong, 120 A.3d 299, 307 (Pa. Super. 2015), the Court discussed the legal history of what is called the "collective knowledge doctrine" which is sometimes called the fellow-officer rule.

> "When a police officer instructs or requests another officer to make an arrest, the arresting officer stands in the shoes of the instructing officer and shares in his or her knowledge. In Commonwealth v. Kenney, 297 A.2d 794 (Pa. 1972), the Pennsylvania Supreme Court adopted the rationale of Whiteley, and upheld a warrantless arrest made by a detective who lacked probable cause, where he acted at the direction of his superior who had specific knowledge of facts and circumstances sufficient to constitute probable cause."

Yong, 120 at 307.

Here, the Court heard testimony from Corporal Schimp and Trooper Marcinko that Corporal Schimp ordered Trooper Marcinko to arrest the Defendant for suspicion of DUI. In Commonwealth v. Segida, 985 A.2d 871, 879 (Pa. 2009), the Pennsylvania Supreme Court stated:

> "the types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech."

Id.

Corporal Schimp interacted with the Defendant over several times on the early morning of June 3, 2015. When the Defendant came to the front door of his residence initially, Corporal Schimp smelled an alcoholic beverage emanating from the Defendant's person. Corporal Schimp also testified that the Defendant's eyes were bloodshot and glossy and that the Defendant made several statements that Corporal Schimp found to be inconsistent such as the fact that the last time the Defendant saw his car it was parked in front of his house as against the fact that the

12

224

keys to the garage were in his truck in the garage. In this case, the collective knowledge doctrine would apply to the arrest of the Defendant for suspicion of DUI as the arresting officer, Trooper Marcinko, stands in the shoes of his instructing officer, Corporal Schimp. Therefore, Trooper Marcinko shares in Corporal Schimp's observations of the Defendant and had sufficient probable cause to arrest the Defendant. In addition, Trooper Marcinko had observed much of the same signs of intoxication, himself. In sum, the arrest of the Defendant for suspicion of DUI was legal.

## D. Search Warrant for the Defendant's Blood Was Legal

Defendant challenges the legality of the search warrant for the Defendant's blood, Commonwealth Exhibit No. 17, and believes it to be illegal. The warrant for the Defendant's blood includes the contents of the affidavit for the search warrant of the Defendant's garage and Corporal Race's statements of his observations of the Defendant but adds that the Defendant refused to submit to a blood draw. Furthermore, Defendant cites as error that the warrant for the Defendant's blood states that the crime or conduct is in violation of 75 Pa.C.S. 3732(a) – Homicide by Vehicle. In fact, this specific section of the Motor Vehicle Code excludes DUI as there is a separate section of the Code for DUI related Homicide by Vehicle at 75 Pa.C.S. § 3735(a) – Homicide by Vehicle While Under the Influence of Alcohol or Controlled Substance.

In Commonwealth. v. Rucy, 892 A.2d 802, 815 (Pa. 2006), the Pennsylvania Supreme Court explained how technical violations in an affidavit of probable cause do not always equate to suppression. The Pennsylvania Supreme Court stated:

> We take the opportunity that the instant case presents to accord legal significance to the common-sense distinction between the absence of probable cause and the mere lack of a full and complete articulation of the same. The failure of Trooper Bryan to comply fully with the requirements of Pennsylvania Rule of Criminal Procedure 206 in no way negated the fact that the district

13

225

> justice who issued the first warrant had a substantial basis for concluding that probable cause existed to suspect Appellant of having committed the various DUI-related offenses with which he was ultimately charged. However procedurally imperfect the Bryan Affidavit may have been, there is simply no reason why the district justice should not be permitted to draw the substantive conclusion that the facts and circumstances included in that Affidavit so strongly compelled.

Id.

Similar to the analysis of the search warrant for the Defendant's garage in Section B and the analysis above in Section C, the affidavit of probable cause contained all the relevant facts of the investigation of the crash and the interactions and observations of the Defendant by the police. Additionally, the affidavit of probable cause for the search warrant of the Defendant's blood includes information about the fact that the Defendant did not submit to blood testing after being arrested for suspicion of DUI and included Trooper Race's observations of the Defendant. On all the affidavits for Commonwealth Exhibits Nos. 16, 17, 18, and 19, the crime stated on the first page of each is "Title 75, C.S. 3732(a) – Homicide by Vehicle". However, the crime of Driving under the Influence is referred to and detailed on a later page in the narrative on Commonwealth Exhibits Nos. 17 and 18. The fact that the code section for Homicide by Vehicle was placed on the affidavit of probable cause for the search warrant of the Defendant's blood and not the code section for Homicide by Vehicle While Under the Influence of Alcohol or Controlled Substance is a technical violation and does not in itself make the warrant defective.

## E. The Additional Search Warrants Were Legal

Defendant asserts that the following additional search warrants did not contain sufficient probable cause and were defective: 1) the search warrant to obtain evidence from Defendant's vehicle issued at 10:50 a.m. on June 5, 2015, referred to as Commonwealth Exhibit No. 18; 2) the search warrant to seize and view the contents of the Black LG Flip Phone, issued at 2:00 p.m.

14

on June 5, 2015 referred to as Commonwealth Exhibit No. 19; 3) the search warrant to obtain evidence from the Defendant's vehicle related to its mechanical operation and equipment, issued at 9:30 a.m. on June 10, 2015, referred to as Commonwealth Exhibit No. 15; and, 4) cell phone records including content, two warrants issued at 3:28 p.m. on June 3, 2015 and at 9:11 a.m. on June 4, 2015, referred to Commonwealth Exhibits Nos. 13 and 14.

### 1. Defendant's Vehicle

Trooper Gausman filled out the application for the search warrant to search the Defendant's vehicle, Commonwealth's Exhibit No. 18. The affidavit of probable cause for the search warrant contains information about the investigation and what steps Officer Day took, which led him to the Defendant's property and ultimately to the Defendant's garage. Additionally, the affidavit of probable cause included the observations of Trooper Marcinko and Officer Day about what they had seen inside the Defendant's garage and what Trooper Gausman had seen inside of the Defendant's vehicle, which included several bottles of Budweiser. The truck was completely missing a tire, had a damaged rim, and there was damage to the passenger side front area of the vehicle. As stated in James, the Court can only consider what is in the four corners of the affidavit of probable cause. James, 69 at 187. Here, the Court holds that there was sufficient probable cause for the search warrant of the Defendant's vehicle to attempt to locate any evidence of the victim, evidence of the identity of the operator, and the evidence of any alcoholic beverages or drugs.

### 2. Black LG Flip Phone

Trooper Gausman obtained a warrant for a search of the contents of an LG flip phone that was found in the Defendant's truck. While searching the truck, the Troopers present kept hearing a cell phone go off. The cell phone was eventually found in a camo cooler bag on the

15

227

right rear passenger floorboards. The Court has reviewed Commonwealth Exhibit No. 19 and finds that there was sufficient probable cause for the search warrant of the Black LG Flip Phone and its contents to attempt to obtain evidence of information concerning the criminal investigation of the crash including the identity of occupants of the vehicle and the belief that persons involved in criminal conduct often use cell phone text messages to share information regarding criminal activity. For the above reasons, the Court finds that the search warrant was not defective.

### 3. Evidence from Defendant's Vehicle Relating to Mechanical Operation and Equipment

Corporal Kurtis P. Rummel alleges in his affidavit of probable cause (Exhibit 15) information involving his background in the investigation along with his employment as a Collision Analysis and Reconstruction Specialist for the PSP. Corporal Rummel's affidavit of probable cause contained information about the investigation and included his comparison and analysis of the crash evidence noting similarities between debris found at the crash scene and the Defendant's vehicle. The Court finds that Corporal Rummel's affidavit of probable cause for the search warrant of Defendant's vehicle relating to mechanical operation would provide evidence, as to the operation of the vehicle before, during, or after the collision took place. Therefore, the Court finds that the affidavit contained sufficient probable cause and thus the search warrant was not defective.

### 4. Cell Phone Records

In his affidavit for Commonwealth Exhibit 14, Trooper Craig Needham recites the information he received from Trooper Gausman about the investigation of the crash allegedly involving the Defendant. Trooper Needham, in his affidavit of probable cause, states that the search warrant authorizing detailed text message and cell phone data of the Defendant's cell

16

228

phone could contain evidence relating to cell phone location at the time of the collision based the cell tower data collected. This could place the phone as being at the scene of the crash at the time it occurred. Trooper Needham also testified that Trooper Gausman provided him with information about the ongoing investigation of the crash involving the Defendant and such information showed up in his affidavit of probable cause. Therefore, the Court finds that the search warrant for the Defendant's cell phone data and or text messages contained sufficient probable cause and thus the search warrant was not defective.

In all the above instances, the Magisterial District Judges and The Honorable John H. Pavlock had before them affidavits with sufficient allegations of facts providing probable cause for the searches. Although Defense Counsel spent considerable time questioning the truthfulness of the officers' information given to the officers obtaining the warrants, this Court cannot base its decision on such officers' credibility. Instead the Court must only look to see whether the officer obtaining the warrant or the judicial officer granting the warrant had any reason to question the honesty and accuracy of the information received. "Probable cause to support issuance of a search warrant is present where facts and circumstances within the affiant's knowledge, of which he has reasonable trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in belief that a search should be conducted." Bruner, 564 at 1282. In none of the above warrants was there any information provided which carried any obvious unreasonable, inconsistent or untrustworthy information which could have alerted the obtainer of the warrant of any unreliability. The information was received from officers of the law for whom there was no indicia of unreliability.

17

## IV. CONCLUSION

For the above reasons, this Court filed its Order of April 29, 2016 in which the Defendant's Motion to Suppress was DENIED.

BY THE COURT:

MAY 19, 2016

WILLIAM F. MORGAN, S.J.,
Specially Presiding

c: DA
g miller
D lang
(5/19/16)

18

230